COPY

**AMENDED    PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: |
|---|---|

| Name (under which you were convicted):<br><br>David Leon | Docket or Case No.:<br><br>**C07−03954MHP** |
|---|---|

| Place of Confinement :<br>High Desert State Prison<br>P.O. Box 3030, Susanville, CA 96127 | Prisoner No.:<br><br>V-72125 |
|---|---|

| Petitioner (include the name under which you were convicted)<br><br>David Leon | v. | Respondent (authorized person having custody of petitioner)<br><br>Tom Felker |
|---|---|---|

| The Attorney General of the State of  California |
|---|

**PETITION**

1.    (a) Name and location of court that entered the judgment of conviction you are challenging:

Santa Clara County Superior Court
San Jose, California

(b) Criminal docket or case number (if you know):    EE223464

2.    (a) Date of the judgment of conviction (if you know):  10/14/2004

(b) Date of sentencing:    1/18/2005

3.    Length of sentence:    40 years to life

4.    In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes    ☐ No

5.    Identify all crimes of which you were convicted and sentenced in this case:

Second degree murder
Shooting at an occupied vehicle
Gun use enhancement

6.    (a) What was your plea? (Check one)

☑ (1)    Not guilty          ☐ (3)    Nolo contendere (no contest)

☐ (2)    Guilty          ☐ (4)    Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.  Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.  If you did appeal, answer the following:

(a) Name of court:       Sixth District Court of Appeal

(b) Docket or case number (if you know):       EE223464

(c) Result:       Affirmed

(d) Date of result (if you know):       10/20/2006

(e) Citation to the case (if you know):

(f) Grounds raised:
See Attachment A

(g) Did you seek further review by a higher state court?       ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court:    California Supreme Court

(2) Docket or case number (if you know):       S148256

(3) Result:
    Affirmed

(4) Date of result (if you know):       2/7/2007

AO 241
(Rev. 12/04)

(5) Citation to the case (if you know):

(6) Grounds raised:
   See Attachment A

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

   If yes, answer the following:

   (1) Docket or case number (if you know):

   (2) Result:

   (3) Date of result (if you know):

   (4) Citation to the case (if you know):

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

   (a)   (1) Name of court:    Sixth District Court of Appeal

      (2) Docket or case number (if you know):    H030074

      (3) Date of filing (if you know):    4/12/2006

      (4) Nature of the proceeding:    Petition for Writ of Habeas Corpus

      (5) Grounds raised:
         Denied of the Sixth and Fourteenth Amendment right to the effective assistance of counsel due to counsel's failure to aruge the principle found in CALJIC No. 5.50.1 during his closing argument.

   (6) Did you receive a hearing where evidence was given on your petition, application, or motion?
   ☐ Yes    ☑ No

   (7) Result:    Affirmed

   (8) Date of result (if you know):    10/20/2006

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐   Yes   ☐  No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

AO 241
(Rev. 12/04)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes      ☐ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:      ☑ Yes      ☐ No

(2) Second petition:    ☐ Yes      ☐ No

(3) Third petition:     ☐ Yes      ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds. State the facts supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:**
Denied of the Sixth and Fourteenth Amendment right to the effective assistance of counsel due to trial counsel's failure to aruge CALJIC No. 5.50.1 during closing argument.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
    See Attachment B

(b) If you did not exhaust your state remedies on Ground One, explain why:

✎AO 241
(Rev. 12/04)

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition for writ of habeas corpus

Name and location of the court where the motion or petition was filed:

Sixth District Court of Appeal
San Jose, California

Docket or case number (if you know):    H030074

Date of the court's decision:    10/20/2006

Result (attach a copy of the court's opinion or order, if available):

Affirmed - See Attachment C

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
California Supreme Court
San Francisco, CA

Docket or case number (if you know):    S148275

Date of the court's decision:    2/7/2007

Result (attach a copy of the court's opinion or order, if available):

Affirmed - See Attachment D

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

✎AO 241
(Rev. 12/04)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND TWO:**
   Denial of due process under the Fifth and Fourteenth Amendment due to the trial court's failure to instruct the
jury _sua sponte_ that a citizen may justifiably kill the prepetrator of a burglary when the nature of the crime is
such that it yields a reasonable fear of death or great bodily injury.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

   See Attachment E

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

        (2) If you did _not_ raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

                ☐ Yes     ☑ No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know):

        Date of the court's decision:

AO 241
(Rev. 12/04)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two

**GROUND THREE:**
Denial of due process under the Fifth and Fourteenth Amendment due to the trial court's refusal to give CALJIC
No. 5.43.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attachment F, pp. 17-28

✎AO 241
(Rev. 12/04)

Page 10

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No
(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No
(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No
(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**
Denial of due process under the Fifth and Fourteenth Amendment due to the trial court's error in giving CALJIC
Nos. 5.54 and 5.55.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
See Attachment F, pp. 29-38

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
        ☐ Yes   ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FIVE:**
Denial of due process under the Fifth and Fourteenth Amendment when the trial court refused to give defendant's requested instruction that a bb gun is a dangerous and deadly weapon.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attachment F, pp. 39-41

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground   Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND  SIX:**
Denial of due process under the Fifth and Fourteenth Amendment when the trial court failed to instruct <u>sua</u> <u>sponte</u> that a citizen may use deadly force in order to apprehend a fleeing felon.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
See Attachment F, pp. 41-48

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)  **Direct Appeal of Ground  Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND   SEVEN:** ⟩
Denial of due process under the Fifth and Fourteenth Amendment when the jury was instructed on second degree felony murder even though the theory had no application to the facts of the case.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attachment F, pp. 50-59

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)      **Direct Appeal of Ground  Seven:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
        ☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 12/04)

Page 11 **D**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND EIGHT:**
Denial of due process under the Fifth and Fourteenth Amendment due to the trial court's error in failing to instruct on the collateral purpose element of second degree felony murder.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attachment F, pp. 59-62

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Eight:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☐ Yes     ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND  NINE:**
    Denial of due process under the Fifth and Fourteenth Amendment since the jury was instructed on an
irrebutable presumption regarding the malice element of second degree felony murder.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    See Attachment F, pp. 64-66

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground  Nine:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☐ Yes     ☑ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐  Yes     ☐  No

    (7) Result:

    (8) Date of result (if you know):

  (d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

    (1)  First petition:     ☐  Yes     ☐  No

    (2)  Second petition:    ☐  Yes     ☐  No

    (3)  Third petition:     ☐  Yes     ☐  No

  (e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.      For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

     CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND TEN:**
Denial of the right to equal protection under the Fourteenth Amendment insofar as the merger rule applies to the offense of the negligent discharge of a weapon but not the offense of shooting at an occupied vehicle.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    See Attachment G, pp. 38-41

(b) If you did not exhaust your state remedies on Ground One, explain why:

✎AO 241
(Rev. 12/04)

(c)     **Direct Appeal of Ground  Ten:**

      (1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes   ☑ No

      (2) If you did not raise this issue in your direct appeal, explain why:

      Ineffective assistance of appellate counsel

(d) **Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      ☑ Yes   ☐ No

      (2) If your answer to Question (d)(1) is "Yes," state:

      Type of motion or petition:     Petition for writ of habeas corpus

      Name and location of the court where the motion or petition was filed:

      California Supreme Court

      Docket or case number (if you know):    S156486

      Date of the court's decision:    **Still pending**

      Result (attach a copy of the court's opinion or order, if available):

      (3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☐ No

      (4) Did you appeal from the denial of your motion or petition?     ☐ Yes   ☐ No

      (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes   ☐ No

      (6) If your answer to Question (d)(4) is "Yes," state:

      Name and location of the court where the appeal was filed:

      Docket or case number (if you know):

      Date of the court's decision:

      Result (attach a copy of the court's opinion or order, if available):

      (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

✎AO 241
(Rev. 12/04)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND   ELEVEN:**
Denial of due process under the Fourteenth Amendment due to appellate counsel's ineffective assistance
insofar as the equal protection claim specified in ground ten was not raised on appeal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
See Attachment G, pp. 41-42

(b) If you did not exhaust your state remedies on Ground        , explain why:

(c)      **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?       ☐ Yes     ☑ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:
Ineffective assistance of appellate counsel

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:       Petition for writ of habeas corpus

Name and location of the court where the motion or petition was filed:
California Supreme Court

Docket or case number (if you know):     S156486

Date of the court's decision:     **Still pending**

✎AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion or petition?          ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):




(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:




(e)       **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?  ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so,

ground or grounds have not been presented, and state your reasons for not presenting them:

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?    ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

of any court opinion or order, if available.

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?    ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

raised.

✎AO 241
(Rev. 12/04)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:


(b) At arraignment and plea:


(c) At trial:
      Steve Elrick
      701 Miller Street, San Jose, CA 95111
(d) At sentencing:
      Same as above

(e) On appeal:
      Dallas Sacher
      100 N. Winchester Blvd., Suite 310, Santa Clara, CA 95050
(f) In any post-conviction proceeding:
      Same as above

(g) On appeal from any ruling against you in a post-conviction proceeding:

      Same as above


17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:



(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?            ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

✎AO 241
(Rev. 12/04)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.    § 2244(d) provides in

part that:

     (1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

          (A)     the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

          (B)     the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

          (C)     the date on which the constitutional right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

          (D)     the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

✎AO 241
(Rev. 12/04)

(2)    The time during which a properly filed application for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____March 18, 2008_____ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

I am the petitioner's counsel of record.

## IN FORMA PAUPERIS DECLARATION

_____
[insert appropriate court]

* * * * *

Attachment A

1. Defendant was deprived of due process under the federal Constitution when the trial court failed to instruct the jury *sua sponte* that a citizen may justifiably kill the perpetrator of a burglary when the nature of the crime is such that it yields a reasonable fear of death or great bodily injury.

2. Defendant was deprived of due process under the federal Constitution when the trial court refused to give CALJIC No. 5.43.

3. Defendant was deprived of due process under the federal Constitution when the trial court gave CALJIC Nos. 5.54 and 5.55.

4. Defendant was deprived of due process under the federal Constitution when the trial court refused to give his proposed instruction regarding the fact that a bb gun is a dangerous and deadly weapon.

5. Defendant was deprived of due process under the federal Constitution when the trial court failed to instruct *sua sponte* that a citizen may use deadly force in order to apprehend a fleeing burglar.

6. Defendant was deprived of due process under the federal Constitution since the jury was instructed on the doctrine of second degree felony murder when it had no application to the facts of the case.

7. Defendant was deprived of due process under the federal Constitution when the jury was not instructed on the collateral purpose element of second degree felony murder.

8. Defendant was deprived of due process under the federal Constitution since the jury was instructed on an irrebutable presumption regarding an element of second degree felony murder.

# ATTACHMENT B

S148275

SUPREME COURT
F I L E D

NOV 2 2 2006

Frederick K. Ohlrich Clerk
_____
DEPUTY

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| IN RE THE MATTER OF ] | NO._____ |
| ] | |
| DAVID LEON, ] | (Court of Appeal No. |
| ] | H030074 |
| On Habeas Corpus. ] | |
| ] | (Santa Clara Co. |
| ] | Superior Court |
| _____] | No. EE223464) |

PETITIONER'S PETITION FOR REVIEW

SIXTH DISTRICT APPELLATE PROGRAM

DALLAS SACHER
Assistant Director
State Bar #100175
100 N. Winchester Blvd., Suite 310
Santa Clara, CA 95050
(408) 241-6171
DALLAS@SDAP.ORG

Attorneys for Petitioner,
DAVID LEON

RECEIVED

NOV 2 8 2006

S • D • A • P

## TABLE OF CONTENTS

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REASONS FOR GRANTING REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Defense Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.     PETITIONER WAS DEPRIVED OF THE EFFECTIVE
        ASSISTANCE OF COUNSEL UNDER THE SIXTH AND
        FOURTEENTH AMENDMENTS TO THE FEDERAL
        CONSTITUTION WHEN HIS TRIAL ATTORNEY FAILED
        TO ARGUE THE PRINCIPLE FOUND IN CALJIC NO.
        5.50.1 DURING HIS CLOSING ARGUMENT. . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

*Dobbs v. Turpin* (11th Cir. 1998)
    142 F.3d 1383 ................................................................ 19,20

*People v. Garvin* (2003)
    110 Cal. App. 4th 484 ....................................................... 16

*Hall v. Washington* (7th Cir. 1997)
    106 F.3d 742 ................................................................... 20

*Herring v. New York* (1975)
    422 U.S. 853 ................................................................... 18

*In re Bartholomew D.* (2005)
    131 Cal. App. 4th 317 ....................................................... 19

*People v. Cardenas* (1982)
    31 Cal. 3d 897 ................................................................ 20

*People v. Howard* (1987)
    190 Cal. App. 3d 41 ......................................................... 17

*People v. Minifie* (1996)
    13 Cal. 4th 1055 ........................................................... 16,17

*People v. Moore* (1954)
    43 Cal. 2d 517 ................................................................ 16

*People v. Pearch* (1991)
    229 Cal. App. 3d 1282 ....................................................... 21

*People v. Pena* (1984)
    151 Cal. App. 3d 462 ........................................................ 19

*Strickland v. Washington* (1984)
    466 U.S. 668 ............................................................... 17,21

# TABLE OF AUTHORITIES (CONTINUED)

## CONSTITUTIONS

United States Constitution
    Sixth Amendment ................................................................ 1,16
    Fourteenth Amendment .................................................... 1,16

## STATUTES

Penal Code
    Section 186.22 ..................................................................... 4
    Section 187 ...................................................................... 4,5
    Section 245 ......................................................................... 4
    Section 246 ...................................................................... 4,5
    Section 654 ......................................................................... 5
    Section 995 ......................................................................... 4
    Section 12022.5 .................................................................. 4
    Section 12022.53 ................................................................ 4
    Section 12022.53, subdivision(d) ...................................... 5

## MISCELLANEOUS

CALJIC NO. 5.50.1 ........................................... 2,16,17,18,19,20

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| IN RE THE MATTER OF | ] |
| | ] NO._____ |
| DAVID LEON, | ] |
| | ] (Court of Appeal No. |
| On Habeas Corpus. | ] H030074 |
| | ] |
| | ] (Santa Clara Co. |
| | ] Superior Court |
| | ] No. EE223464) |

## ISSUE PRESENTED FOR REVIEW

WAS PETITIONER DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION WHEN HIS ATTORNEY FAILED TO ARGUE TO THE JURY THAT PETITIONER WAS ENTITLED TO ACT QUICKLY AND HARSHLY IN SELF DEFENSE DUE TO THE ANTECEDENT ASSAULT COMMITTED AGAINST HIM?

## REASONS FOR GRANTING REVIEW

Petitioner makes no claim that this case satisfies the criteria for a grant of review. However, it is equally true that a grave miscarriage of justice has been suffered by petitioner. As a result, this court should direct the Court of Appeal to issue an order to show cause.

Petitioner was convicted of second degree murder based on his act of

- 1 -

shooting Enrique Hernandez who had earlier attacked him and then caused a mob to chase him home. When Mr. Hernandez returned in the dead of night in the automobile of his girlfriend, Ms. Rodriguez, petitioner intervened when Mr. Hernandez began to beat and/or shoot the window of a vehicle owned by petitioner's neighbor.

Given these circumstances, the jury was presented with a close factual question as to whether petitioner used reasonable force in discharging his gun at the automobile in which Mr. Hernandez was a passenger. As the government readily conceded at trial, Mr. Hernandez was a gangster. Insofar as petitioner knew that Mr. Hernandez was bent on violence and perhaps had a pellet gun, the defense theory of the case was that petitioner acted in reasonable self defense and defense of property.

Regrettably, petitioner's lawyer greatly weakened the defense theory when he failed to make a proper closing argument. As he was required to do, the trial judge instructed the jury pursuant to CALJIC No. 5.50.1 that petitioner was entitled to act "quickly and harshly" in self defense in light of Mr. Hernandez' earlier assault on him. Although this instruction should have been at the center of petitioner's case, defense counsel did not mention No. 5.50.1 during his closing argument nor did he argue the key principle found in the instruction. This omission is inexcusable.

The undisputed facts establish that Mr. Hernandez was a dangerous sociopath. He committed an unprovoked assault on petitioner and then caused a mob to chase him. Although petitioner scared the mob away by firing a gun into the air, Mr. Hernandez returned in the dead of night in order to engage in further felonious conduct while armed with a pellet gun. In the ordinary course of human affairs, a jury would be inclined to acquit petitioner on these facts.

However, the problem with the defense case was that Mr. Hernandez had returned to his girlfriend's car before he was shot. This fact allowed the prosecutor to argue that the shooting could not have been in self defense. While the prosecutor's thesis is certainly plausible, an effective performance by defense counsel would have easily countered the prosecutor's position.

Although petitioner may have acted precipitously by shooting Mr. Hernandez, he had a legal right to act "quickly and harshly" under the circumstances. However, defense counsel failed to impress this rule of law on the minds of the jurors. Had he done so, the jurors would have acquitted petitioner.

Indeed, even though defense counsel botched his closing argument, the jury struggled mightily with the case. The jury deliberated for nine hours and requested a rereading of Ms. Rodriguez' testimony. (CT 1065, 1067-1068,

1072-1073, 1078.) Given these objective indications that the case was close, it is manifest that counsel's error tipped the balance against petitioner. This court should intercede in order to remedy the miscarriage of justice which has fallen upon petitioner.

<u>STATEMENT OF THE CASE</u>

On December 26, 2003, petitioner was charged in an information filed in the Superior Court for Santa Clara County. (CT 749-752.)[1]/ In count one, petitioner was charged with murder (Penal Code section 187). (CT 750.) In count two, petitioner was charged with shooting at an occupied motor vehicle (Penal Code section 246). (CT 750.) Gun use enhancements (Penal Code section 12022.53) and gang enhancements (Penal Code section 186.22) were charged as to both counts one and two. (CT 750-751.) In count three, an assault with a deadly weapon was charged (Penal Code section 245). (CT 751.) A gun use enhancement (Penal Code section 12022.5) and a gang enhancement (Penal Code section 186.22) were charged as to count three. (CT 751.)

On May 19, 2004, petitioner filed a motion to dismiss count three pursuant to Penal Code section 995. (CT 770-783.) On May 28, 2004, the

---

[1]The record references are to the record on appeal in H028370. The record is before this court with regard to the petition for review taken in H028370.

- 4 -

motion was granted.  (CT 802.)

On September 15, 2004, a jury trial commenced.  (CT 836-837.)  On the afternoon of October 12, 2004, the jury retired to deliberate.  (CT 1065.)  Late on the morning of October 14, 2004, the jury returned its verdicts.  (CT 1078.)  On count one, petitioner was acquitted of first degree murder, but convicted of the lesser included offense of second degree murder.  (CT 1078.)  Petitioner was also convicted on count two (shooting at an occupied vehicle).  (CT 1078.)  The gun use enhancements were found true.  (CT 1078.)  The gang enhancements were found untrue.  (CT 1078.)

On January 18, 2005, petitioner was sentenced to prison for the term of 40 years to life.  (CT 1158-1159.)  Petitioner received 15 years to life for his conviction for second degree murder and an enhancement of 25 years to life pursuant to Penal Code section 12022.53, subdivision (d).  (CT 1158.)  The punishment for the Penal Code section 246 conviction was stayed pursuant to Penal Code section 654.  (CT 1158.)

On April 12, 2006, petitioner filed a petition for writ of habeas corpus in the Court of Appeal in conjunction with his appeal in H028370.  On October 20, 2006, the judgment was affirmed in H028370. On the same date, the habeas petition was summarily denied.  (Exhibit A to this petition.)

///

- 5 -

## STATEMENT OF FACTS

On the evening of November 15, 2002, Kimiko Rodriguez was in the company of her boyfriend, Enrique Hernandez. (RT 54.) After going to a 7-11 to buy beer, Ms. Rodriguez and Mr. Hernandez went to Pilo's house at the corner of Fair Oaks and East Taylor in Sunnyvale. (RT 54-55.) According to Sunnyvale Police Lieutenant Timothy Ahearn, the address was known as a "crash pad" for Sureno gang members. (RT 1164.) Indeed, Mr. Hernandez had belonged to the Sureno gang SST for "some years." (RT 1132.)

Ms. Rodriguez wanted to go home and eventually prevailed upon Mr. Hernandez to accompany her. (RT 56-57.) While driving on Fair Oaks, Ms. Rodriguez passed a Stop and Go. (RT 57.) Mr. Hernandez yelled to someone on the sidewalk and alighted from the car while it was still moving. (RT 58.) Mr. Hernandez approached the person on the sidewalk and a fight ensued. (RT 59.) The person in question was petitioner. (RT 61.)

Mr. Hernandez punched petitioner in the face and knocked him to the ground. (RT 60.) Petitioner crawled away, got to his feet and ran down the street. (RT 60.) Mr. Hernandez pursued petitioner. (RT 63.) Mr. Hernandez was joined in the pursuit by two men who had been standing at the corner. (RT 64-65.) As he ran, Mr. Hernandez whistled for additional support. (RT 66, 70.) Eventually, another man and a woman joined Mr. Hernandez' group.

- 6 -

(RT 67, 70-71.) The group ended up on America Street where Mr. Hernandez was "yelling at some houses." (RT 70.)

Various percipient witnesses offered differing accounts as to the number of people who were with Mr. Hernandez at the time. Jesse Bynum placed the number at ten to twelve people (RT 591-593, 1938); Chris Leon indicated that there were two carloads of people and others on foot and bicycle (RT 798-799); Jose Alcazar testified that there were four people with Mr. Hernandez (RT 940-941); Jennifer Leonard testified that there were five or six people (RT 259); Cheuritta Cox placed the number of people at five (RT 1988).

As Mr. Hernandez' group congregated on the street, petitioner entered his parents' home at 366 America Street. (RT 241, ACT 13-14.) Petitioner returned to the street where he was joined by Chris Leon and Jesse Bynum. (RT 796.) Petitioner fired a shot into the air and Mr. Hernandez' group left. (RT 943-945.)

Following the action on America Street, Ms. Rodriguez drove Mr. Hernandez back to Pilo's residence. (RT 72-73.) Ms. Rodriguez left Mr. Hernandez at Pilo's home and returned to her mother's house. (RT 73-74.)

In the next two hours, suspicious vehicles cruised by 366 America Street. According to the account of Chris Leon, the vehicles included a

- 7 -

Honda, a primered truck and a primered Impala. (RT 820.) Mr. Leon saw the

vehicles "coming up and down the street plenty of times" with their lights off.

(RT 820.)

At approximately 2:15 a.m., Ms. Rodriguez returned to Pilo's home

and picked up Mr. Hernandez. (RT 75.) Ms. Rodriguez drove to America

Street at Mr. Hernandez' request. (RT 81.) Mr. Hernandez was upset because

somebody had twice shot at his friend Lupe. (RT 179.)

As Ms. Rodriguez drove down America Street, she turned off her

headlights and used only her parking lights. (RT 82, 88.) At Mr. Hernandez'

request, Ms. Rodriguez stopped by a Ford truck. (RT 82.) Mr. Hernandez got

out of the car and began hitting the window of the truck. (RT 82-84.)

At that point, petitioner appeared in the middle of the street and ran

towards Mr. Hernandez. (RT 89.) Mr. Hernandez jumped in the car and

urged Ms. Rodriguez to drive away. (RT 87.) Insofar as petitioner was

running directly at her car, Ms. Rodriguez either braked or took her foot off

the gas. (RT 88.) Petitioner moved to the right side of the car. (RT 88.) Ms.

Rodriguez heard a bang. (RT 89.) As Ms. Rodriguez drove away, Mr.

Hernandez announced that he had been shot. (RT 93.)

Ms. Rodriguez drove to Pilo's house. (RT 94.) After noticing that Mr.

Hernandez' chest was dripping blood, Ms. Rodriguez took him to the hospital.

- 8 -

(RT 95.)  Mr. Hernandez died at the hospital.  (RT 96.)  Mr. Hernandez'
autopsy revealed a blood alcohol level of .09 to .11 and the presence of
methamphetamine in his blood.  (RT 1701, 1703.)

Following Mr. Hernandez' demise, the police seized Ms. Rodriguez'
car.  A bb gun was found on the passenger floorboard.  (RT 200-201, 229.)
In addition, 75 bb pellets were found in Mr. Hernandez' shirt pocket.  (RT
842.)

At 6 a.m., Officer Tracy Hern saw petitioner emerge from 366
America.   (RT 499.)   Subsequently, Detective Kathryn Debeaubien
transported petitioner downtown in the company of Omar Guzman.  (RT
1002.) During the course of the ride, petitioner told Mr. Guzman that "he hid
in the bushes and watched while Hernandez's friends drove up and down the
street pointing at the Leon residence." (RT 1010.) Petitioner also stated that
he "shot at the car once, at the passenger side of the car.  Once at Enrique
Hernandez, but at the time he didn't know that he had actually struck him with
a bullet." (RT 1019.)

Officer Robert Ciano examined the passenger side door of Ms.
Rodriguez' car. (RT 198.) He found a bullet hole that was "58 degrees from
a horizontal plane perspective to the curvature of the door." (RT 200.) In
layman's terms, the shot was fired in a downward direction. (RT 212.) The

- 9 -

shot entered the door just below the window. (People's Exhibit 5.) Criminalist Eric Barloewen testified that the shot had been fired from a distance greater than two feet. (RT 670-672.)

Officer Robert Scott searched the house at 366 America Street. (RT 393-394.) Officer Scott found a .9 millimeter pistol which had been secreted underneath a couch in the living room. (RT 394.) Officer Scott also found two .9 millimeter casings on the street. (RT 404, 406.) According to Mr. Barloewen, the casings found on the street had been fired from the .9 millimeter gun found at 366 America Street. (RT 669-670.)

Lieutenant Tim Ahearn was qualified as an expert "in the field of criminal street gangs." (RT 11.) Lieutenant Ahearn opined that petitioner was "affiliated" with the Vario Via Sol gang (VVS). (RT 1148.) In this regard, petitioner has a "smile now cry later" tattoo which is a "common tattoo for gang members." (RT 1142-1143.) In addition, petitioner had previously identified himself as a Norteno to Detective Anderson and had been seen with "Norteno gang members." (RT 1140-1141, 1148.)

Lieutenant Ahearn testified that a known VVS member, Edgardo Cisneros, had been found in possession of the taped interview of petitioner's neighbor, Cheuritta Cox. (RT 1149.) As a result, Lieutenant Ahearn drew the inference that petitioner had an "ongoing association with Vario Via Sol."

- 10 -

(RT 1149.)

Lieutenant Ahearn also noted that petitioner had rented a room in a house with Sam Gonzales. (RT 1147.) Insofar as Mr. Gonzales possessed a red bandanna which said "Norte," Lieutenant Ahearn opined that petitioner's association with Mr. Gonzales showed that he was a gang member. (RT 1147-1148.)

As its final piece of evidence, the government introduced the statement which petitioner had given to Detective Anderson on the morning after the shooting. Petitioner indicated that he had gone drinking with his girlfriend, Margaret, and his brother, John. (ACT 7.) At approximately 12 a.m. to 1 a.m., petitioner and his companions took a taxi to his parents' house. (ACT 8.) Insofar as he was quarreling with Margaret, petitioner took a walk around the corner. (ACT 9.)

As petitioner was walking down the street, he was accosted by some "Mexican dudes." (ACT 9-10.) When one of the "dudes" threw a punch at him, petitioner backed up since he did not want to fight. (ACT 10-11.)

Petitioner ran away from the confrontation. (ACT 11.) As he fled, petitioner encountered his brother Chris and Jesse Bynum. (CT 11.) Petitioner and Chris went home as did Jesse. (ACT 12.)

At first, petitioner told Detective Anderson that he remained inside his

- 11 -

house for the remainder of the evening. (ACT 12-13.) When Detective Anderson indicated that he did not believe this aspect of his account, petitioner admitted that he had retrieved his gun and gone back outside. (ACT 13-14.) When petitioner saw that a group of six to eight potential assailants had gathered, petitioner fired a single shot in the air. (ACT 14-15.) At that point, the group fled. (ACT 17.)

Once again, petitioner told Detective Anderson that he retired to his house and stayed inside for the balance of the night. (ACT 19.) However, as before, petitioner changed his story after Detective Anderson indicated that he did not believe him. (ACT 19.)

In his revised account, petitioner stated that he saw both a truck and a Honda Civic come by his house. (ACT 21.) Petitioner recognized the Civic as having been involved in the earlier altercation. (ACT 21.) Eventually, petitioner was standing outside in the bushes with Jesse Bynum and Cary Arnold. (ACT 24, 32.) Petitioner saw the Civic return and a "Mexican dude" get out and begin banging on his friend's truck. (ACT 25.) It sounded to petitioner as if Mr. Hernandez was using sparkplugs or a bb gun. (ACT 26-27.)

Petitioner ran towards Mr. Hernandez. (ACT 28.) Mr. Hernandez got into the Civic which swerved in petitioner's direction. (ACT 34.) However,

- 12 -

petitioner did not believe that the driver was trying to hit him. (ACT 34.) As the Civic went by, petitioner shot at the door. (ACT 29.) In firing a single shot, petitioner aimed for "the bottom half of the door" because he " didn't want to shoot him in the head . . . ." (ACT 40.) When petitioner was informed that Mr. Hernandez had died, he was shocked. (ACT 41, RT 1400-1401.)

Petitioner indicated that he tossed his gun into some bushes after the shooting. (ACT 37.) However, as was noted above, the gun was found underneath a couch in the home of petitioner's parents. (RT 394.)

Jesse Bynum largely corroborated petitioner's story. According to Mr. Bynum, both a truck and a Honda Civic slowly drove by the Leon residence during the course of the evening. (RT 637.) When the Civic stopped, Mr. Hernandez began banging on the window of a truck which is owned by Mr. Bynum's father. (RT 610, 626.) It appeared that Mr. Hernandez was employing a "gun-shaped object." (RT 608.) As the banging continued, petitioner ran towards Mr. Hernandez on the sidewalk "in a low crouch." (ACT 68.) Mr. Bynum did not see the shot fired by petitioner although he saw the flash of the gun in the corner of his eye. (ACT 68.)

After the shooting, Mario Ojeda was walking by petitioner's house. (RT 952.) Petitioner and Mr. Bynum came out and told him to get inside

- 13 -

before he got shot. (RT 953.) As Mr. Bynum later told the police, petitioner

told Mr. Ojeda: "These fools are trippin' I had to dump on them." (ACT 69.)

<u>Defense Case</u>

David Medina was 20 years old at the time of trial. (RT 1537.) Mr.

Medina admitted that he had previously been a member of VVS in his

younger days. (RT 1541.) However, petitioner was not a member of the

gang. (RT 1610.)

Mr. Medina went to school with Mr. Hernandez. (RT 1618.) He

recounted an incident which had occurred six years earlier. (RT 1618-1619.)

During the lunch recess, Mr. Medina was in the school parking lot by

himself. (RT 1618-1619, 1621.) Accompanied by ten to twenty people, Mr.

Hernandez approached Mr. Medina and ordered him to remove his shirt. (RT

1624-1625.) Mr. Medina declined to do so and turned his back. (RT 1630.)

Mr. Hernandez attacked Mr. Medina. (RT 1630-1631.) Mr. Hernandez

shoved a garbage can into Mr. Medina's face. (RT 1632.) Mr. Medina

became dazed and went to the hospital for treatment. (RT 1635-1636.)

Omar Guzman testified regarding the conversation that he had with

petitioner as they were being transported to jail by Officer Debeaubien.

Petitioner told Mr. Guzman that he had been harassed by three people in a bar.

(RT 1716.) As a result, he went home. (RT 1716.) Subsequently, petitioner

- 14 -

saw a truck without headlights coming down his street. (RT 1717.) When he saw a gun pointed at his house and himself, petitioner fired two shots. (RT 1717, 1725.) When the gun was pointed at him, petitioner heard clicking noises. (RT 1730.)

Mr. Guzman was impeached with the fact that he had suffered a prior felony conviction for assault against Jose Alcazar. (RT 1720-1721.) In addition, Officer Debeaubien testified on rebuttal that she had not heard any of the statements which Mr. Guzman recounted. (RT 2003.)

Travis Cox is a friend of petitioner. (RT 1811.) Mr. Cox testified that petitioner is neither a gang member nor is he a violent person. (RT 1817.)

Ryan Light was employed along with petitioner as a window washer. (RT 1824.) Mr. Light opined that petitioner is not a violent person. (RT 1825.)

Judy Stahmer is one of petitioner's neighbors. (RT 1845.) Ms. Stahmer asserted that petitioner is honest and non-violent. (RT 1848.)

Todd Rudy is one of petitioner's neighbors. (RT 1857.) Mr. Rudy believes that petitioner is honest and non-violent. (RT 1858.)

Stanley Stovall works with petitioner's brothers at Mahoney Print Service. (RT 1922.) Mr. Stovall believes that petitioner is honest and non-violent. (RT 1923-1924.)

Derrick Stahmer engraved several tattoos on petitioner. (RT 1832.) The "smile now cry later" tattoo which he placed on petitioner also appears on the cover of an album by Motley Crue. (RT 1837.)

## I.

PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION WHEN HIS TRIAL ATTORNEY FAILED TO ARGUE THE PRINCIPLE FOUND IN CALJIC NO. 5.50.1 DURING HIS CLOSING ARGUMENT.

For at least the last fifty years, California law has provided that a person is entitled to act more quickly and harshly in self defense than is usually the case when he has been the subject of prior assaults or threats by the alleged victim. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065; *People v. Moore* (1954) 43 Cal.2d 517, 531; *People v. Garvin* (2003) 110 Cal.App.4th 484, 488.) Given the settled nature of this principle, a multitude of cases hold that the trial court must grant a defendant's request for a jury instruction on this topic. (*Garvin, supra,* 110 Cal.App.4th at p. 488 and cases cited therein.)

In the case at bar, the trial court gave CALJIC No. 5.50.1. (RT 2034.) In material part, the instruction provided:

"In addition, a person whose life or safety has been previously threatened or assaulted by another, is justified in acting more quickly and taking harsher measures for self protection from an assault by that person, than would a person who had not received threats or had previously been assaulted

- 16 -

by the same person." (RT 2034.)

Without doubt, there was ample evidence to support the instruction. As was undisputed at trial, Mr. Hernandez engaged in an unprovoked assault on petitioner and then caused a mob to chase him. Under the settled principles of California law, petitioner had the right to act "quickly and harshly" if Mr. Hernandez threatened an assault on a second occasion. (*People v. Minifie, supra,* 13 Cal.4th 1055, 1065.)

The central theme of the defense case was that petitioner acted in self defense. However, in arguing his self defense theory to the jury, defense counsel made no mention of No. 5.50.1 nor did he argue the principle stated in the instruction. This omission served to deprive petitioner of a fair trial.

A meritorious claim of ineffective assistance of counsel requires a two part showing: (1) counsel's performance fell below the objective standard of prevailing professional norms; and (2) the defendant was prejudiced by counsel's failing. (*Strickland v. Washington* (1984) 466 U.S. 668, 688-695.) With respect to the requisite showing of prejudice, a defendant is entitled to relief if he can show "a significant but something-less-than 50 percent likelihood of a more favorable" result absent counsel's error. (*People v. Howard* (1987) 190 Cal.App.3d 41, 48.)

Closing argument is a critical stage of a jury trial. As the Supreme

- 17 -

Court has recognized, no aspect of the trial "could be more important than the opportunity finally to marshal the evidence for each side before the submission of the case to judgment." (*Herring v. New York* (1975) 422 U.S. 853, 862.) Indeed, in a particular case, a "persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment." (*Id.* at p. 863, fn. omitted.)

In the case at bar, there can be no doubt that counsel's summation fell below the standard of care. For lack of a better phrase, the principle stated in No. 5.50.1 is a golden one for the defense. Insofar as the instruction says that a defendant is entitled to act "quickly and harshly" in self defense, any competent defense attorney would relentlessly argue the instruction to the jury. This is especially true in this case where the success or failure of the self defense theory would spell the difference between liberty or a life sentence.

Trial counsel has not indicated that he had a tactical reason for failing to argue No. 5.50.1 to the jury. (Exhibit A to habeas petition.) Insofar as any rational lawyer would have strongly relied on No. 5.50.1, the dispositive question is whether petitioner was prejudiced by counsel's error.

At the outset, it must be emphasized that the rule stated in No. 5.50.1 is a critical one. The principle is so vital to a jury's understanding of the concept of self defense that the omission to give the instruction "is presumed

- 18 -

prejudicial, requiring reversal. [Citations.]" (*People v. Pena* (1984) 151 Cal.App.3d 462, 475.) By parity of reasoning, counsel's failure to argue the instruction must be deemed equally prejudicial. This is particularly true in this case.

The undisputed facts were strongly evocative of righteous self defense. Mr. Hernandez had previously manifested his violent propensities and he was in the process of committing an auto burglary while armed with a deadly weapon. (*In re Bartholomew D.* (2005) 131 Cal.App.4th 317, 326 [pellet gun is a dangerous weapon as a matter of law].) However, there was a weakness in the defense case in that Mr. Hernandez had returned to his car and was preparing to flee when he was shot. Given Mr. Hernandez' apparent plan to break off the action, a reasonable juror might conclude that appellant did not shoot in self defense. However, the skillful use of No. 5.50.1 could well have persuaded a rational juror that appellant's conduct was justified.

Concededly, petitioner acted "quickly and harshly" when he shot Mr. Hernandez. However, under the law, he had a right to do so. By failing to emphasize this very point to the jury, defense counsel left a gaping hole in his presentation.

*Dobbs v. Turpin* (11th Cir. 1998) 142 F.3d 1383 establishes the merit of petitioner's position. In *Dobbs*, the defendant was charged with a capital

crime. During the sentencing phase of the trial, defense counsel failed to argue the particular facts which rendered the crime unworthy of the ultimate punishment. The court found that counsel's error was prejudicial in combination with other errors since a proper focus on mitigating facts might have led to a different result. (*Id.* at pp. 1389-1391; see also *Hall v. Washington* (7th Cir. 1997) 106 F.3d 742, 750 [reversal required since counsel's closing argument failed to focus on the relevant matters at issue].)

Petitioner will not belabor his point. The critical issue to be decided by the jury was whether petitioner acted with excessive force when he shot Mr. Hernandez. Had defense counsel properly cited and argued No. 5.50.1, it is probable that the jury would have concluded that petitioner's "quick and harsh" use of force was lawful.

Finally, it cannot be overlooked that the record yields objective factors indicating that the case was a close one. The jury deliberated for approximately nine hours. (CT 1065, 1072-1073, 1078.) Thus, the case was obviously not open and shut. (*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [deliberations of six hours is proof that the case was close].)

During their extensive deliberations, the jurors asked to view Ms. Rodriguez' car door and to have her testimony reread "from the time she pulls up to Jesse's truck until she drives away after second shot." (CT 1067-1068.)

Given these requests, it is manifest that the jury was in no hurry to convict petitioner. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 [request for the rereading of testimony indicates that the case was close].)

An error made by defense counsel must result in a remedy when the appellate court lacks "confidence" that a fair result was reached at trial. (*Strickland v. Washington*, supra, 466 U.S. 668, 694.) In this case, defense counsel severely dropped the ball when he failed to strongly argue the central legal principle which would have resulted in petitioner's exoneration. Reversal is compelled.

## CONCLUSION

For the reasons expressed above, the Court of Appeal should be directed to issue an order to show cause.

Dated: November 2 0 , 2006          Respectfully submitted,

DALLAS SACHER
Attorney for Petitioner,
David Leon

- 21 -

## CERTIFICATE OF COUNSEL

I certify this petition contains 4430 words.

Dated: November 2 0 , 2006

DALLAS SACHER
Attorney for Petitioner
David Leon

Exhibit A

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

**FILED**

OCT 2 0 2006

MICHAEL J. YERLY, Clerk

By _____
              DEPUTY

In re                                         H030074

DAVID LEON                                    (Santa Clara County
                                              Super. Ct. No. EE223464)
            On Habeas Corpus.
                                              ORDER

THE COURT:

   The petition for writ of habeas corpus is denied.


   (Bamattre-Manoukian, Acting P. J., Mihara, J. and McAdams, participated
   in this decision.)


Dated: ___OCT 2 0 2006___        _____
                                 BAMATTRE - MANOUKIAN, J.
                                 BAMATTRE-MANOUKIAN, ACTING P.J.

**RECEIVED**

OCT 2 3 2006

S • D • A • P

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to this action and my business address is 100 N. Winchester Blvd., Suite 310, Santa Clara, California 95050.    On the date shown below, I served the within **PETITIONER'S PETITION FOR REVIEW** to the following parties hereinafter named by:

<u>X</u>    Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Clara, California, addressed as follows:

John Deist, Esq.
Office of the Attorney General
455 Golden Gate Avenue
Suite 11,000
San Francisco, CA 94102-7004
[attorney for respondent]

Court of Appeal
333 W. Santa Clara Street
Suite 1060, 10th Floor
San Jose, CA 95113

Office of the District Attorney
70 W. Hedding Street
San Jose, CA 95110

Stephen Elrick, Esq.
Office of the Alternate Defender
701 Miller Street
San Jose, CA 95110

Superior Court
191 N First Street
San Jose, CA 95113

David Leon
V-72125
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

I declare under penalty of perjury the foregoing is true and correct.  Executed this 20th day of November, 2006, at Santa Clara, California.

_____
Priscilla O'Harra

# ATTACHMENT C

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

# FILED

OCT 2 0 2006

MICHAEL J. YERLY, Clerk

By _____
                    DEPUTY

In re

DAVID LEON

On Habeas Corpus.

H030074

(Santa Clara County
Super. Ct. No. EE223464)

ORDER

THE COURT:

The petition for writ of habeas corpus is denied.

(Bamattre-Manoukian, Acting P. J., Mihara, J. and McAdams, participated in this decision.)

Dated: ___OCT 2 0 2006___

BAMATTRE - MANOUKIAN, J.
BAMATTRE-MANOUKIAN, ACTING P.J.

RECEIVED

OCT 2 3 2006

S•D•A•P

# ATTACHMENT D

Court of Appeal, Sixth Appellate District - No. H030074
S148275

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DAVID LEON on Habeas Corpus

Petition for review DENIED.

SUPREME COURT
FILED

FEB 07 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE
_____
Chief Justice