# ATTACHMENT E

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

PEOPLE OF THE STATE OF CALIFORNIA, ]
                                        ]  NO. H028370
      Plaintiff and Respondent,    ]
                                           ]  (SANTA CLARA CO.
     vs.                            ]  SUPERIOR COURT
                                           ]  NO. EE223464)
DAVID LEON,                      ]
                                         ]
      Defendant and Appellant.    ]
_____]

I.

APPELLANT WAS DEPRIVED OF DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY *SUA SPONTE* THAT A CITIZEN MAY JUSTIFIABLY KILL THE PERPETRATOR OF A BURGLARY WHEN THE NATURE OF THE CRIME IS SUCH THAT IT YIELDS A REASONABLE FEAR OF DEATH OR GREAT BODILY HARM.

The uncontradicted evidence at trial established that Mr. Hernandez engaged in an unprovoked assault on appellant and then caused a mob to chase him home. Shortly thereafter, Mr. Hernandez returned in the dead of night and began to hammer and/or shoot the window of a vehicle owned by appellant's neighbor. Before Mr. Hernandez could break the window, appellant intervened and shot him. On this record, the trial court erred when

- 1 -

it failed to instruct the jury that a homicide is justifiable when it is committed to prevent a burglary which threatens death or great bodily harm.

During the instructional conference, appellant requested that the jury be instructed with CALJIC No. 5.43 which sets forth the principles concerning when force may be used in the defense of property.[1]/ (RT 2054-2059.)   In denying the requested instruction, the court cited *People v. Ceballos* (1974) 12 Cal.3d 470 and held that "deadly force cannot be used solely for the protection of property."  (RT 2054-2055.)

Without doubt, the court misunderstood *Ceballos*.  If the court had properly applied *Ceballos* in the instant case, it would have given the following instruction *sua sponte* based on CALJIC Nos. 5.10, 5.15, 5.16, 6.00 and 14.58:

"Homicide is justifiable and not unlawful when

_____

1.     In his opening brief, appellant contended that the court erred by failing to give No. 5.43.  (AOB 17-28.)  To a large extent, the instant argument involves the same legal authority as was addressed in appellant's opening brief.  However, there is a significant difference between the two claims of error.

The claim raised in this brief is that the jury should have been instructed that appellant had the right to *kill* Mr. Hernandez if Mr. Hernandez was committing a burglary which threatened death or great bodily harm.  In contrast, No. 5.43 states only that force may be used in defense of property.  Plainly, the instruction discussed in this brief was of much greater utility to appellant since it provided a broader legal right (i.e. the right to commit a justifiable homicide).

- 2 -

committed by any person who is resisting an attempt to commit a forcible and atrocious crime.

"An auto burglary is a forcible and atrocious crime when the manner of its commission threatens, or is reasonably believed by the defendant to threaten life or great bodily injury so as to instill a reasonable fear of death or great bodily injury in the defendant.

"An attempted auto burglary is shown when there is evidence to establish each of the following elements:

1. A person attempted to enter an automobile when the doors were locked; and

2. At the time of the attempted entry, the person had the specific intent to steal either the automobile or its contents or had the specific intent to commit damage inside of the automobile which would rise to the value of $400 or more.

"An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.

"In determining whether this act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. These acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design."

"The burden is on the prosecution to prove beyond a reasonable doubt that an attempted auto burglary which threatened death or great bodily injury did not occur."

As a starting point in justifying the necessity for the foregoing

instruction, it is settled that a trial court has the duty to instruct on an affirmative defense *sua sponte* """"if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."" [Citations.]" (*People v. Maury* (2003) 30 Cal.4th 342, 424.) Here, there was substantial evidence that Mr. Hernandez was committing an auto burglary and that appellant acted to prevent the commission of the crime. Indeed, defense counsel made this theory apparent when he requested No. 5.43. Given this record, the trial court had a duty to instruct the jury on the affirmative defense found in Penal Code section 197, subdivision 2. The statute provides:

> "Homicide is also justifiable when committed by any person in any of the following cases:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "2. When committed in defense of habitation, *property,* or person, against one who manifestly intends to or endeavors, *by violence or surprise, to commit a felony,* or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein . . . ."
> (Emphasis added.)

As interpreted by the Supreme Court, section 197 allows for the use of deadly force in defense of property when the person threatening the property is committing a forcible or atrocious crime. (*People v. Ceballos,* supra, 12 Cal.3d 470, 478-479.) Burglary is deemed to be such a crime when the

"character and manner of the burglary" yields a reasonable "fear of great bodily harm . . . ." (*Id.* at p. 479.) This is such a case.

As recounted by Mr. Bynum, it appeared that Mr. Hernandez was pounding on the window of his vehicle with a "heavy tool" or object. (RT 650.) For his part, appellant believed that Mr. Hernandez was hitting the window with a sparkplug or was shooting at the window with a bb gun. (ACT 26-27.) On these facts, it reasonably appeared that Mr. Hernandez was in the process of committing a burglary.

Penal Code section 459 defines burglary as the entry into a vehicle when the doors are locked with the intent to commit a felony. (See *In re James B.* (2003) 109 Cal.App.4th 862, 867.) Here, appellant reasonably believed that Mr. Hernandez was bent on entering Mr. Bynum's vehicle either for the purpose of stealing it or engaging in significant vandalism. Since there was substantial evidence to support such a belief, the trial court was required to instruct on the defense found in section 197, subdivision 2. (See *People v. Wild* (1976) 60 Cal.App.3d 829, 832 [where decedent was tossing bricks through the window of a tavern, it was a jury question as to whether decedent was committing vandalism or attempted burglary].)

In positing this conclusion, appellant hastens to add that the record shows much more than a garden variety auto burglary. Prior to the threat to

Mr. Bynum's property, Mr. Hernandez had engaged in an unprovoked assault on appellant and had summoned several colleagues to pursue appellant with the presumed intent of committing a group assault.    Thereafter, Mr. Hernandez and his colleagues apparently drove by appellant's home a number of times.  Finally, there was ample evidence that Mr. Hernandez was armed with a bb gun while he was attempting to enter Mr. Bynum's vehicle.  Given all of these facts, appellant was entitled to believe that a "forcible and atrocious" burglary was in progress.  (*Ceballos*, supra, 12 Cal.3d at pp. 478-479.)

*Nakashima v. Takase* (1935) 8 Cal.App.2d 35 supports appellant's position.  There, the owner of a restaurant believed that his premises were going to be burglarized.  After closing for the day, the owner hid in the darkness.  When two burglars entered, the owner shot one of the burglars dead without warning.  On these facts, the court held that the killing was lawful under Penal Code section 197, subdivision 2 since the burglars, though unarmed, had used "force and violence . . . in the act of breaking in . . . ."  (*Id.* at p. 39.)

The case at bar is analytically indistinguishable from *Nakashima*.  In both cases, the decedent acted with "violence" by breaking property.  If the use of deadly force was warranted to defend against the burglary at a

- 6 -

restaurant, it was equally warranted here to defend against an auto burglary. Indeed, if anything, the use of force was far more justifiable in this case since appellant was well aware of Mr. Hernandez' previously manifested violent propensities.

Appellant anticipates that the government will assert that *Nakashima* is distinguishable since Mr. Hernandez was attempting to flee when appellant shot him. While this fact is concededly unhelpful to appellant's cause, it was not sufficient to justify denial of the defense instruction.

It is the trial court's duty to resolve evidentiary doubts concerning a defense instruction in favor of the defendant. (*People v. Flannel* (1979) 25 Cal.3d 668, 684-685.) Here, appellant acted during a rapidly developing situation which transpired in the course of a few seconds. Under these circumstances, there was sufficient evidence for the instruction to be given such that the jury could make an informed determination regarding the legality of appellant's conduct. (See *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 737, fn. 19, disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [distinguishing *Nakashima* and holding that it was a question for the jury whether the shooting of a fleeing robber was justified]; compare *People v. Wittig* (1984) 158 Cal.App.3d 124, 134 [self defense instruction not required where alleged assailant was already well down the street when shots were first fired].)

- 7 -

The error in failing to instruct on the defense is reversible per se. By failing to instruct the jury that appellant had the right to use force in defending Mr. Bynum's property, the court effectively deprived appellant of his sole defense. Since the instructional omission thereby eliminated the defense theory of the case, reversal per se is required.

In this regard, the controlling rule is that the omission to instruct on the defense theory of the case constitutes reversible error unless "'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' [Citation.]" (*People v. Stewart* (1976) 16 Cal.3d 133, 141; accord, *People v. Lee* (1987) 43 Cal.3d 666, 675, fn. 1.)[2] Insofar as the record shows that the jury gave no consideration to the issue of whether Mr. Hernandez' commission of an auto burglary justified appellant's use of force, per se reversal is compelled. (*People v. Lemus* (1988) 203 Cal.App.3d 470, 478 [per se reversal ordered where no instruction was given on self defense].)

Aside from California law, per se reversal is required under the due

---

2.    Two Court of Appeal opinions have said that the failure to instruct on a defense does not require reversal per se. (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 391; *People v. Elize* (1999) 71 Cal.App.4th 605, 616.) However, these cases cannot be followed since this court is required to adhere to the rule stated by the state Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

process clause of the federal Constitution. In *United States v. Escobar De Bright* (9th Cir. 1984) 742 F.2d 1196, the defendant was charged with the conspiracy to sell drugs. Although there was substantial evidence that the defendant had conspired with a government agent, the trial court refused to instruct the jury on the defendant's theory that a conspiracy conviction cannot be found where the only co-conspirator is a government agent. After finding that the instruction should have been given, the Court of Appeals held that the error was reversible per se:

> "The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error. Jurors are required to apply the law as it is explained to them in the instructions they are given by the trial judge. They are not free to conjure up the law for themselves. Thus, a failure to instruct the jury regarding the defendant's theory of the case precludes the jury from considering the defendant's defense to the charges against him. Permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal." (*Escobar De Bright, supra*, 742 F.2d at pp. 1201-1202.)

Importantly, the analysis in *Escobar De Bright* is entirely consistent with that which has been subsequently posited by the Supreme Court. In this regard, the court has indicated that per se reversal is required when an error "vitiates <u>all</u> the jury's findings." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281, emphasis in original.) Or, stated otherwise, per se reversal is compelled

- 9 -

when the consequences of an error "are necessarily unquantifiable . . . ." (*Id.* at p. 282; accord, *Neder v. United States* (1999) 527 U.S. 1, 10-11.) Since it is impossible to know whether a jury would have accepted a defense which it never had occasion to consider, the conclusion is inescapable that the effect of the instructional omission is "necessarily unquantifiable." (See *Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 740-741 [structural error found where the defense was precluded from presenting its "theory of the case"]; *United States v. Sarno* (9th Cir. 1995) 73 F.3d 1470, 1485 ["failure to instruct a jury upon a legally and factually cognizable defense is not subject to harmless error analysis. [Citations.]"].)

Notwithstanding the foregoing authority, appellant recognizes that there is a recent Court of Appeal case which holds that a similar error implicated the harmless error test found in *Chapman v. California* (1967) 386 U.S. 18. (*People v. Quach* (2004) 116 Cal.App.4th 294, 303.) In *Quach,* the Court of Appeal held that CALJIC No. 5.56 is erroneous insofar as it provides that an original aggressor always forfeits his right of self defense unless he first apprises his adversary that he wants to stop fighting. Although the defendant argued that the error was reversible per se, the court held that the *Chapman* standard was applicable since there was some instruction on the defense theory. (*Ibid.*) With all due respect for the *Quach* court, this holding

- 10 -

is insupportable.

As has been argued above, the effect of the error in *Quach* (and here) was to eliminate the defense theory of the case. If a jury is not given sufficient information concerning the defense theory, it is as if no instruction was given. *Quach* was wrongly decided.

Assuming arguendo that the *Chapman* standard is applicable, it is the government's burden to establish that the error was harmless beyond a reasonable doubt. (*Chapman, supra*, 386 U.S. 18, 24.) The People cannot shoulder their burden in this case.

Given the instructional omission, there was a glaring defect in appellant's self defense theory in that he voluntarily placed himself in danger by advancing on Mr. Hernandez when he did not have to do so. In his closing argument, the prosecutor strongly emphasized this defect by arguing at length that appellant had no right to confront Mr. Hernandez because "[b]y the defendant's own admissions, [Mr. Hernandez] didn't know that the defendant was there . . . ." (RT 2093.) Thus, the prosecutor argued to the jury that appellant had no right to confont Mr. Hernandez since there was an absence of danger.

> "But there's obviously no imminent danger of any forcible and atrocious crime being accomplished by Enrique Hernandez on either the defendant, his family, his friends, anyone on the street. He's accomplishing vandalism at best.

- 11 -

(RT 2093.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"And especially doesn't mean that you can kill him when you know that what he is doing is engaging in an act of vandalism. *You can't kill somebody to protect property.* You can kill somebody when you're afraid of imminent harm to yourself, either deadly or great bodily injury." (RT 2171, emphasis added.)

As is readily apparent, the prosecutor's argument could not be rebutted by the defense in the absence of the missing instruction. Insofar as the jury knew, appellant had no right to take vigorous steps in defense of Mr. Bynum's property. Thus, the instructional omission allowed the prosecutor to make an affirmatively incorrect argument. Contrary to the prosecutor's argument, there was certainly substantial evidence that Mr. Hernandez was committing a "forcible and atrocious" crime.

On this record, it cannot be said beyond a reasonable doubt that a properly instructed jury would have rejected appellant's defense of property theory. Since the effect of the error was to preclude the jury from considering appellant's primary theory of the case, reversal is required. (*Sullivan v. Louisiana,* supra, 508 U.S. 275, 279; *People v. Quartermain* (1997) 16 Cal.4th 600, 621 [reversal is required under *Chapman* when the error has had a palpable effect on the jury's consideration of the case].)

Aside from the contents of the prosecutor's closing argument, the

- 12 -

record yields other objective factors indicating that the case was a close one. The jury deliberated for approximately nine hours. (CT 1065, 1072-1073, 1078.) Thus, the case was obviously not open and shut. (*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [deliberations of six hours is proof that the case was close].)

During their extensive deliberations, the jurors asked to view Ms. Rodriguez' car door and to have her testimony reread "from the time she pulls up to Jesse's truck until she drives away after second shot." (CT 1067-1068.) Given these requests, it is manifest that the jury was in no hurry to convict appellant. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 [request for the rereading of testimony indicates that the case was close].)

Under the federal Constitution, appellant had a right to have the jury fully and fairly consider whether he acted reasonably in defense of his friend's property. Even though the jury was precluded from considering appellant's theory, it was still reluctant to convict him. On this record, the government cannot establish that the instructional omission was harmless beyond a reasonable doubt.

Assuming arguendo that this court should conclude that the test set forth in *People v. Watson* (1956) 46 Cal.2d 818 is applicable, reversal is still warranted. Under *Watson*, prejudice must be found if there is a "*reasonable*

*chance*" that the jury would have reached a different result absent the error. (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, emphasis in original.) Under this test, appellant has no burden to show that it is more likely than not that the error was prejudicial. (*Ibid.*) Rather, reversal is compelled if the error is such that it undermines confidence in the result reached at trial. (*Ibid.*)

Appellant will not repeat the analysis set forth above. Insofar as appellant had reasonable grounds to believe that Mr. Hernandez was in the process of committing an auto burglary, there is a significant likelihood that the jury would have acquitted appellant had they known that he was entitled to use force in order to protect Mr. Bynum's property. The convictions for second degree murder and shooting at an occupied vehicle must be reversed.

## CONCLUSION

For the reasons expressed in all of appellant's briefs, the judgment should be reversed.

Dated: April 28, 2006              Respectfully submitted,


DALLAS SACHER
Attorney for Appellant,
David Leon

- 14 -

# ATTACHMENT F

I.

APPELLANT WAS DEPRIVED OF DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT REFUSED TO GIVE CALJIC NO. 5.43.

Appellant requested that the jury be instructed with CALJIC No. 5.43.[1] (RT 2054-2058.) The instruction would have advised the jury that appellant was entitled to use reasonable force in the defense of property. In refusing to give the instruction, the court held that "deadly force cannot be used solely for the protection of property." (RT 2054.) The court cited *People v. Ceballos* (1974) 12 Cal.3d 470 for this proposition. (RT 2054-2055.) As will be demonstrated below, the court committed reversible error when it failed to give No. 5.43.

As a starting principle, it is well settled that a defendant is entitled to an instruction on his theory of the case so long as there is substantial evidence in support of the theory. (*People v. Wickersham* (1982) 32 Cal.3d 307, 324, overruled on another point in *People v. Barton* (1995) 12 Cal.4th 186, 200.)

---

[1]    CALJIC No. 5.43 provides:
"When conditions are present which, under the law, justify a person in using force in defense of property, that person may use that degree and extent of force as would appear to a reasonable person, placed in the same position, and seeing and knowing what the resisting person then sees and knows, to be reasonably necessary to prevent imminent injury threatened to the property. Any use of force beyond that limit is excessive and unjustified, and anyone using excessive force is legally responsible for the consequences thereof."

17

In this context, doubts as to the sufficiency of the evidence must be resolved in favor of the defendant. (*People v. Flannel* (1979) 25 Cal.3d 668, 684-685.) Moreover, even if the evidence in support of the instruction is "implausible" or "incredible," the court must proceed on the hypothesis that it is entirely true. (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1059; *People v. Burnham* (1986) 176 Cal.App.3d 1134, 1143.)

In this case, there was ample evidence that appellant was acting in defense of property when he fired the fatal shot. The uncontradicted evidence established that Mr. Hernandez was hammering and/or shooting the window of a vehicle when appellant advanced on him. Insofar as the vehicle belonged to appellant's friend, Mr. Bynum, there is no doubt that appellant was entitled to take reasonable steps to prevent damage to the vehicle or its theft. Moreover, appellant was also entitled to use reasonable force in protecting the property.

Penal Code section 197, subdivision 2 provides:

"Homicide is also justifiable when committed by any person in any of the following cases:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"2. When committed in defense of habitation, property, or person, against one who manifestly intends to or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein . . . ."

As interpreted by the Supreme Court, section 197 allows for the use of deadly force in defense of property when the person threatening the property is committing a forcible or atrocious crime. (*People v. Ceballos,* supra, 12 Cal.3d 470, 478-479.)  Burglary is deemed to be such a crime when the "character and manner of the burglary" yields a reasonable "fear of great bodily harm . . . ." (*Id.* at p. 479.)  This is such a case.

As recounted by Mr. Bynum, it appeared that Mr. Hernandez was pounding on the window of his vehicle with a "heavy tool" or object. (RT 650.)  For his part, appellant believed that Mr. Hernandez was hitting the window with a sparkplug or was shooting at the window with a bb gun. (ACT 26-27.)  On these facts, it reasonably appeared that Mr. Hernandez was in the process of committing a burglary.

Penal Code section 459 defines burglary as the entry into a vehicle when the doors are locked with the intent to commit a felony. (See *In re James B.* (2003) 109 Cal.App.4th 862, 867.)  Here, appellant reasonably believed that Mr. Hernandez was bent on entering Mr. Bynum's vehicle either for the purpose of stealing it or engaging in significant vandalism. Since there was substantial evidence to support such a belief, No. 5.43 should have been given. (See *People v. Wild* (1976) 60 Cal.App.3d 829, 832 [where decedent was tossing bricks through the window of a tavern, it was a jury question as

to whether decedent was committing vandalism or attempted burglary].)

In positing this conclusion, appellant hastens to add that the record shows much more than a garden variety auto burglary. Prior to the threat to Mr. Bynum's property, Mr. Hernandez had engaged in an unprovoked assault on appellant and had summoned several colleagues to pursue appellant with the presumed intent of committing a group assault. Thereafter, Mr. Hernandez and his colleagues apparently drove by appellant's home a number of times. Finally, there was ample evidence that Mr. Hernandez was armed with a bb gun while he was attempting to enter Mr. Bynum's vehicle. Given all of these facts, appellant was entitled to believe that a "forcible and atrocious" burglary was in progress. (*Ceballos*, supra, 12 Cal.3d at pp. 478-479.)

*Nakashima v. Takase* (1935) 8 Cal.App.2d 35 supports appellant's position. There, the owner of a restaurant believed that his premises were going to be burglarized. After closing for the day, the owner hid in the darkness. When two burglars entered, the owner shot one of the burglars dead without warning. On these facts, the court held that the killing was lawful under Penal Code section 197, subdivision 2 since the burglars, though unarmed, had used "force and violence . . . in the act of breaking in . . . ." (*Id.* at p. 39.)

The case at bar is analytically indistinguishable from *Nakashima*. In both cases, the decedent acted with "violence" by breaking property. If the use of deadly force was warranted to defend against the burglary at a restaurant, it was equally warranted here to defend against an auto burglary. Indeed, if anything, the use of force was far more justifiable in this case since appellant was well aware of Mr. Hernandez' previously manifested violent propensities.

Appellant anticipates that the government will assert that *Nakashima* is distinguishable since Mr. Hernandez was attempting to flee when appellant shot him. While this fact is concededly unhelpful to appellant's cause, it was not sufficient to justify denial of the defense of property instruction.

As was discussed above, it is the trial court's duty to resolve evidentiary doubts concerning a requested defense instruction in favor of the defendant. (*People v. Flannel*, supra, 25 Cal.3d 668, 684-685.) Here, appellant acted during a rapidly developing situation which transpired in the course of a few seconds. Under these circumstances, there was sufficient evidence for the instruction to be given such that the jury could make an informed determination regarding the legality of appellant's conduct. (See *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 737, fn. 19, disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25

21

Cal.4th 826, 853, fn. 19 [distinguishing *Nakashima* and holding that it was a question for the jury whether the shooting of a fleeing robber was justified]; compare *People v. Wittig* (1984) 158 Cal.App.3d 124, 134 [self defense instruction not required where alleged assailant was already well down the street when shots were first fired].)

The error in failing to give No. 5.43 is reversible per se. By failing to instruct the jury that appellant had the right to use force in defending Mr. Bynum's property, the court effectively deprived appellant of his primary defense. Since the instructional omission thereby eliminated an essential defense theory of the case, reversal per se is required.

In this regard, the controlling rule is that the omission to instruct on the defense theory of the case constitutes reversible error unless "'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' [Citation.]" (*People v. Stewart* (1976) 16 Cal.3d 133, 141; accord, *People v. Lee* (1987) 43 Cal.3d 666, 675, fn. 1.)[2] Insofar as the jury may well have given no consideration to

---

2.    Two Court of Appeal opinions have said that the failure to instruct on a defense does not require reversal per se. (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 391; *People v. Elize* (1999) 71 Cal.App.4th 605, 616.) However, these cases cannot be followed since this court is required to adhere to the rule stated by the state Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

the issue of self defense as it related to the defense of property, per se reversal is compelled. (*People v. Lemus* (1988) 203 Cal.App.3d 470, 478 [per se reversal ordered where no instruction was given on self defense].)

Aside from California law, per se reversal is required under the due process clause of the federal Constitution. In *United States v. Escobar De Bright* (9th Cir. 1984) 742 F.2d 1196, the defendant was charged with the conspiracy to sell drugs. Although there was substantial evidence that the defendant had conspired with a government agent, the trial court refused to instruct the jury on the defendant's theory that a conspiracy conviction cannot be found where the only co-conspirator is a government agent. After finding that the instruction should have been given, the Court of Appeals held that the error was reversible per se:

> "The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error. Jurors are required to apply the law as it is explained to them in the instructions they are given by the trial judge. They are not free to conjure up the law for themselves. Thus, a failure to instruct the jury regarding the defendant's theory of the case precludes the jury from considering the defendant's defense to the charges against him. Permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal." (*Escobar De Bright, supra,* 742 F.2d at pp. 1201-1202.)

Importantly, the analysis in *Escobar De Bright* is entirely consistent

23

with that which has been subsequently posited by the Supreme Court. In this regard, the court has indicated that per se reversal is required when an error "vitiates <u>all</u> the jury's findings." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281, emphasis in original.) Or, stated otherwise, per se reversal is compelled when the consequences of an error "are necessarily unquantifiable . . . ." (*Id.* at p. 282; accord, *Neder v. United States* (1999) 527 U.S. 1, 10-11.) Since it is impossible to know whether a jury would have accepted a defense which it never had occasion to consider, the conclusion is inescapable that the effect of the instructional omission is "necessarily unquantifiable." (See *Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, 740-741 [structural error found where the defense was precluded from presenting its "theory of the case"]; *United States v. Sarno* (9th Cir. 1995) 73 F.3d 1470, 1485 ["failure to instruct a jury upon a legally and factually cognizable defense is not subject to harmless error analysis. [Citations.]"].)

Notwithstanding the foregoing authority, appellant recognizes that there is a recent Court of Appeal case which holds that a similar error implicated the harmless error test found in *Chapman v. California* (1967) 386 U.S. 18. (*People v. Quach* (2004) 116 Cal.App.4th 294, 303.) In *Quach,* the Court of Appeal held that CALJIC No. 5.56 is erroneous insofar as it provides that an original aggressor always forfeits his right of self defense unless he

24

first apprises his adversary that he wants to stop fighting. Although the defendant argued that the error was reversible per se, the court held that the *Chapman* standard was applicable since there was some instruction on the defense theory. (*Ibid.*) With all due respect for the *Quach* court, this holding is insupportable.

As has been argued above, the effect of the error in *Quach* (and here) was to eliminate the defense theory of the case. If a jury is not given sufficient information concerning the defense theory, it is as if no instruction was given. *Quach* was wrongly decided.

Assuming arguendo that the *Chapman* standard is applicable, it is the government's burden to establish that the error was harmless beyond a reasonable doubt. (*Chapman, supra*, 386 U.S. 18, 24.) The People cannot shoulder their burden in this case.

Given the instructional omission, there was a glaring defect in appellant's self defense theory in that he voluntarily placed himself in danger by advancing on Mr. Hernandez when he did not have to do so. In his closing argument, the prosecutor strongly emphasized this defect by arguing at length that appellant had no right to confront Mr. Hernandez because "[b]y the defendant's own admissions, [Mr. Hernandez] didn't know that the defendant was there . . . ." (RT 2093.) Thus, the prosecutor argued to the jury that

appellant had no right to confont Mr. Hernandez since there was an absence of danger.

> "But there's obviously no imminent danger of any forcible and atrocious crime being accomplished by Enrique Hernandez on either the defendant, his family, his friends, anyone on the street. He's accomplishing vandalism at best. (RT 2093.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "And especially doesn't mean that you can kill him when you know that what he is doing is engaging in an act of vandalism. *You can't kill somebody to protect property.* You can kill somebody when you're afraid of imminent harm to yourself, either deadly or great bodily injury." (RT 2171, emphasis added.)

As is readily apparent, the prosecutor's argument could not be rebutted by the defense in the absence of No. 5.43. Insofar as the jury knew, appellant had no right to take vigorous steps in defense of Mr. Bynum's property. Thus, the instructional omission allowed the prosecutor to make an affirmatively incorrect argument. Contrary to the prosecutor's argument, there was certainly substantial evidence that Mr. Hernandez was committing a "forcible and atrocious" crime.

On this record, it cannot be said beyond a reasonable doubt that a properly instructed jury would have rejected appellant's defense of property theory. Since the effect of the error was to preclude the jury from considering appellant's primary theory of the case, reversal is required. (*Sullivan v.*

*Louisiana, supra,* 508 U.S. 275, 279; *People v. Quartermain* (1997) 16 Cal.4th 600, 621 [reversal is required under *Chapman* when the error has had a palpable effect on the jury's consideration of the case].)

Aside from the contents of the prosecutor's closing argument, the record yields other objective factors indicating that the case was a close one. The jury deliberated for approximately nine hours. (CT 1065, 1072-1073, 1078.) Thus, the case was obviously not open and shut. (*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [deliberations of six hours is proof that the case was close].)

During their extensive deliberations, the jurors asked to view Ms. Rodriguez' car door and to have her testimony reread "from the time she pulls up to Jesse's truck until she drives away after second shot." (CT 1067-1068.) Given these requests, it is manifest that the jury was in no hurry to convict appellant. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 [request for the rereading of testimony indicates that the case was close].)

Under the federal Constitution, appellant had a right to have the jury fully and fairly consider whether he acted reasonably in defense of his friend's property. Even though the jury was precluded from considering appellant's theory, it was still reluctant to convict him. On this record, the government cannot establish that the instructional omission was harmless beyond a

27

reasonable doubt.

Assuming arguendo that this court should conclude that the test set forth in *People v. Watson* (1956) 46 Cal.2d 818 is applicable, reversal is still warranted. Under *Watson*, prejudice must be found if there is a "*reasonable chance*" that the jury would have reached a different result absent the error. (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, emphasis in original.) Under this test, appellant has no burden to show that it is more likely than not that the error was prejudicial. (*Ibid.*) Rather, reversal is compelled if the error is such that it undermines confidence in the result reached at trial. (*Ibid.*)

Appellant will not repeat the analysis set forth above. Insofar as appellant had reasonable grounds to believe that Mr. Hernandez was in the process of committing an auto burglary, there is a significant likelihood that the jury would have acquitted appellant had they known that he was entitled to use force in order to protect Mr. Bynum's property. The convictions for second degree murder and shooting at an occupied vehicle must be reversed.

///

///

///

///

II.

APPELLANT WAS DEPRIVED OF DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT GAVE CALJIC NOS. 5.54 AND 5.55.

As has been discussed above, appellant had a right to take reasonable steps to protect Mr. Bynum's property. However, the trial court gave two instructions (CALJIC Nos. 5.54 and 5.55) which improperly advised the jury that appellant's attempt to protect Mr. Bynum's property actually served to negate his right to act in self defense. Insofar as these instructions eviscerated the defense theory of the case, reversal is compelled.

A.    The Trial Court Erred By Giving CALJIC No. 5.54.

Pursuant to CALJIC No. 5.54, the trial court instructed the jury:

"The right of self defense is only available to a person who initiated an assault if he has done all the following.
"1. He has actually tried in good faith to refuse to continue fighting;
"2. He has clearly informed his opponent by either words or conduct that he wants to stop fighting;
"And 3. He has clearly informed his opponent by either words or conduct that he has stopped fighting.
"After he has done these three things, he has the right to self defense if his opponent continues to fight." (RT 2035.)

As is readily apparent, there was absolutely no factual basis for the use of No. 5.54 in this case. As the uncontradicted evidence reveals, Mr. Hernandez was in the process of committing a criminal act when appellant

29

approached him. Given this reality, appellant was not an aggressor as a matter of law.

*People v. Bloyd* (1987) 43 Cal.3d 333 establishes this conclusion. In *Bloyd,* the defendant was charged with murder. The defendant's version of events was that he was awakened by the sound of a gunshot. When he went to investigate, the decedent pointed a gun at him. The defendant then tussled with the decedent and the gun discharged into her face. On these facts, the court held that the trial court acted properly by refusing to give No. 5.54 since the defendant was plainly not an assailant. (*Id.* at p. 354.)

The same is true here. As a matter of law, appellant had every right to confront Mr. Hernandez in order to protect Mr. Bynum's property. Thus, the court plainly erred when it instructed the jury that appellant could be viewed as an aggressor.

Without doubt, the error is prejudicial. This is so since the prosecutor skillfully employed No. 5.54 in order to defeat appellant's self defense theory. In his closing argument, the prosecutor told the jury:

> "Huge problem with that (i.e. appellant's self defense theory) is *he's now the aggressor.* He's running across the street with a gun. He can't shoot at Enrique Hernandez and say that he's in self defense or he was in fear of the car, because at that point he's put himself there. He's the one who's now approaching them with a gun. He's the one who's running across the street running into the headlights with the gun out.

"And he talks about surprising Kimiko. The fact is, he says 'So once they see me, I think she panicked. Know what I'm saying? Straight up. She went -- sound effect, car driving away. Know what I'm saying? Like when she passed me, you know what I'm saying?' Well, yeah, because at that point he's running across the street with a gun. He's running at them. She's afraid. If anything, she could hit him in self defense. *And you're going to receive instructions on that.*

"Again, he didn't try at this point in time, he's not trying to -- and that should be 'in good faith,' I was typing quickly -- *he's not trying to discontinue the fighting.* He hasn't, by his words or conduct, made Kimiko or Enrique realize that he doesn't want to fight anymore. He's coming at him with a gun.

"Again, self-defense just doesn't work in this case for any reason." (RT 2168-2169, emphasis added.)

As the quoted comments reveal, the prosecutor specifically argued to the jury that appellant had forfeited his right to self defense since he had acted as an "aggressor" by confronting Mr. Hernandez. Of course, this thesis was erroneous as a matter of law since appellant had every right to approach Mr. Hernandez. Moreover, given Mr. Hernandez' antecedent assault on him, appellant acted reasonably by arming himself. Under these circumstances, appellant was greatly prejudiced when the prosecutor employed No. 5.54 to eviscerate his self defense theory.

B.     The Trial Court Erred By Giving CALJIC No. 5.55

The trial court instructed the jury with CALJIC No. 5.55. The instruction provided:

31

"The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense." (RT 2035.)

No. 5.55 was not a proper instruction in this case. This is so for the simple reason that appellant did not engage in a "quarrel" with Mr. Hernandez.

The legal principle found in No. 5.55 has deep roots in the common law and contains a correct statement of the law. (*People v. Hinshaw* (1924) 194 Cal. 1, 41; *People v. Conkling* (1896) 111 Cal. 616, 625-627.) The common sense basis for the rule embodied in No. 5.55 is that a defendant cannot commence a conflict with someone and then use a contrived plea of self defense in order to retroactively justify what was essentially an unprovoked criminal assault. However, contrary to the language of No. 5.55, the principle does not apply to any "quarrel." Rather, No. 5.55 is to be used solely in those cases where the conduct of the defendant is such that it would warrant the other person in taking defensive action against the defendant.

*People v. Conkling, supra*, 111 Cal. 616 establishes this conclusion. There, the decedent came into possession of certain real property. The decedent placed a fence across the road on the property even though residents of the neighborhood had commonly traversed the road. One day, the decedent prevented the defendant from using the road and a heated argument ensued.

Subsequently, the defendant tore down the fence and traveled the road while carrying a rifle. Upon being confronted by the decedent, the defendant shot and killed him. At the defendant's murder trial, the trial court instructed the jury:

> "'And, if you believe from the evidence beyond a reasonable doubt, that the defendant killed the deceased, then, to render such killing justifiable, it must appear that the defendant was wholly without fault imputable to him by law in bringing about the commencement of the difficulty in which the mortal wound was given; and while it is true that an honest apprehension of danger to life or limb may justify a man for taking the life of another, yet that apprehension must arise out of a reasonable cause; but a cause which originates in the fault of the person himself, in a quarrel which he has provoked, or in a danger which he has voluntarily brought upon himself by his own misconduct, cannot be considered reasonable or sufficient in law to support a well-grounded apprehension of imminent danger to his person. Error of apprehension the law overlooks when a man is called upon to act on appearances, but it does not overlook dishonesty of apprehension. Hence, a real or apparent necessity, brought about by the design, contrivance, or fault of the defendant, cannot be availed of as a defense for the commission of a crime or homicide.'" (*Conkling, supra*, 116 Cal. at pp. 624-625, emphasis added.)

On the facts before it, the Supreme Court held that the instruction was erroneous. This was so since the instruction unfairly restricted the defendant's right to act in self defense.

> "Aside from any question as to the immediate cause which at the time of the killing precipitated the affray, this language of the instruction is broad enough to justify the jury in believing that it was such a fault or misconduct upon the part of the defendant, in attempting to travel this road under existing

circumstances, as to deprive him of the right of self defense if attacked by deceased at the point where the road was obstructed. Such, certainly, is not the law, and neither court nor counsel for the people would so contend." (*Conkling, supra*, 111 Cal. at pp. 625-626.)

In *People v. Keys* (1944) 62 Cal.App.2d 903, the holding in *Conkling* was applied. There, as in *Conkling*, the decedent sought to bar the defendant from traversing a road on the decedent's property. The defendant shot and killed the decedent when they had a confrontation on the road. As in *Conkling*, it was held that the trial court had erred by instructing the jury that the defendant had no right to self defense if his own acts created the volatile situation. (*Id.*, at pp. 914-915.)

Subsequently, in *People v. Garnier* (1950) 95 Cal.App.2d 489, *Conkling* was again followed. There, the defendant and the decedent spent the afternoon quarreling. When the decedent went to his bedroom, the defendant followed. While in the bedroom, the defendant shot and killed the decedent. At the People's request, the jury was instructed:

> "'The right of self defense is not available to a person who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault, for in such a case the original intent would control.'" (*Garnier, supra*, 95 Cal.App.2d at p. 496.)

The Court of Appeal first noted that the instruction was "proper in form." (*Garnier, supra*, 95 Cal.App.2d at p. 497.) However, citing *Conkling*,

the court concluded that the use of the instruction was probably error, albeit harmless. (*Id.*, at pp. 496-497.)

Applying the foregoing authorities to the case at bar, it is manifest that No. 5.55 should not have been given. This is so for the simple reason that appellant's conduct did not rise to the level of a "quarrel" which would cause him to forfeit his right to self defense.

Viewing the evidence in the light most favorable to the People, the instant facts provided no basis for the use of No. 5.55. After witnessing the commission of a crime, appellant advanced towards Mr. Hernandez. Since appellant was acting in a lawful fashion in seeking to prevent additional criminal conduct, he plainly was not seeking a "quarrel" within the meaning of the instruction.

Given these circumstances, *Conkling* demonstrates that No. 5.55 should not have been given. In *Conkling*, the defendant precipitated a confrontation by traveling a road notwithstanding the decedent's warning that he was trespassing. Nonetheless, the Supreme Court held that the defendant retained his right to self defense. Here, rather than committing a crime as did Mr. Conkling, appellant was seeking to prevent one. If the trespasser in *Conkling* retained his right to self defense, it necessarily follows that appellant did as well.

35

Should there be any doubt about his conclusion, one need only change the roles of the parties in order to reach the same result. If Mr. Hernandez had killed appellant, he could not have done so in self defense. This is so since Mr. Hernandez was in the process of committing a burglary. (*People v. Loustaunau* (1986) 181 Cal.App.3d 163, 170 [burglar has no right to act in self defense].) Thus, since Mr. Hernandez had no right to shoot appellant, it necessarily follows that appellant did not forfeit *his* right to self defense.

C.    The Combined Effect Of The Instructions Was Prejudicial.

The errors in giving Nos. 5.54 and 5.55 are reversible per se. The plain effect of the instructions was to advise the jury to disregard appellant's claim of self defense if it was determined that he had initiated a "quarrel" or an "assault." Since the instructions thereby eliminated the defense theory of the case, reversal per se is required. (*People v. Stewart,* supra, 16 Cal.3d 133, 141; *Conde v. Henry,* supra, 198 F.3d 734, 740-741.)

In taking this position, appellant recognizes that the Supreme Court has held that the erroneous use of No. 5.55 can constitute harmless error. (*People v. Crandell* (1988) 46 Cal.3d 833, 872-873, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) In so holding, the court did not specify a harmless error test and merely cited to *People v. Rollo* (1977) 20 Cal.3d 109 and *Solgaard v. Guy F. Atkinson Co.* (1971) 6 Cal.3d 361.

36

Although *Rollo* did not specify a test, *Solgaard* applied the standard of *People v. Watson,* supra 46 Cal.2d 818.  (*Solgaard,* supra, 6 Cal.3d at p. 371.)  Although this court is concededly bound by *Crandell,* it is worth nothing that it is inconsistent with both state and federal precedent.

The effect of No. 5.55 was to deprive appellant of his only defense theory.  Thus, the error in giving the instruction was no different than a situation where the court fails to give any instruction on the defense theory.  Since the failure to instruct on a defense theory requires per se reversal, logic dictates that the same principle applies here.  (*People v. Lemus,* supra, 203 Cal.App.3d 470, 478 [per se reversal ordered where no instruction was given on self defense].)

In any event, *Crandell* is distinguishable from the case at bar.  In finding no prejudice, the Supreme Court noted that No. 5.55 "did not figure in the closing arguments, . . . ." (*Crandell,* supra, 46 Cal.3d at p. 873.)  The same is not true here.

As appellant has discussed above, the prosecutor specifically argued to the jury that appellant had forfeited his right to self defense when he elected to approach Mr. Hernandez.  (RT 2168-2169.)  In advancing this theory, the prosecutor assured the jurors that they were "going to receive instructions" which would support his thesis.  (RT 2169.)  Of course, those instructions

37

were Nos. 5.54 and 5.55.

In light of the prosecutor's argument, it is manifest that the instructional errors caused the jury to disregard any consideration of appellant's defense. Given the prosecutor's affirmative representation that appellant had no right to self defense, prejudice must be found. (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876-877 [prejudice found where counsel relied on an erroneous instruction in closing argument].)

The central issue at trial was whether appellant acted reasonably in self defense. If he did, he was fully entitled to shoot directly at Ms. Rodriguez' car. Of course, the jury never answered the question posed by the evidence since Nos. 5.54 and 5.55 (and the prosecutor's closing argument) precluded the jury from considering appellant's defense.

Appellant presented substantial evidence that he fired his gun in self defense. However, the improper use of No. 5.54 and 5.55 prevented the jury from adjudicating appellant's theory of the case. Reversal is required. (*People v. Conkling,* supra, 111 Cal. 616, 625-626.)

///

///

///

///

38

III.

APPELLANT WAS DEPRIVED OF DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT REFUSED TO GIVE HIS PROPOSED INSTRUCTION REGARDING THE FACT THAT A BB GUN IS A DANGEROUS AND DEADLY WEAPON.

In support of his self defense theory, appellant requested the following jury instruction.

> "A pellet gun, such as the weapon in evidence in this case, constitutes a deadly and dangerous weapon as a matter of law.
> "As a deadly and dangerous weapon, a pellet gun is capable of inflicting great bodily injury." (CT 847.)

The trial court declined to give the requested instruction. (RT 2050.) The court did not give a rationale for its decision. (RT 2050.) As will now be demonstrated, the court's ruling constitutes reversible error.

A criminal defendant is entitled to a jury instruction which relates his theory of the case. (*People v. Wright* (1988) 45 Cal.3d 1126, 1136-1137.) If an instruction requested by the defense is supported by substantial evidence and properly states "'a principle of law applicable to the case,'" the court is mandated to give the instruction. (*Id.* at p. 1135; accord, *People v. Ward* (2005) 36 Cal.4th 186, 214.) Here, appellant's proposed instruction should have been given.

The defense theory of the case was that appellant acted in reasonable

39

self defense and defense of property when he confronted Mr. Hernandez. The proposed jury instruction was directly relevant to the defense theory since it provided guidance regarding whether appellant faced an objective risk. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [act of self defense must be objectively reasonable].)

In this regard, there was substantial evidence that Mr. Hernandez was armed with a pellet gun at the time that he was either beating or shooting the window of Mr. Bynum's vehicle. Since appellant believed that Mr. Hernandez may have been shooting the gun (ACT 27), he was entitled to consider this fact in determining whether he should shoot Mr. Hernandez.

Importantly, the legal status of Mr. Hernandez' weapon was not something which was intuitively known to the jurors. Thus, it was necessary that the jurors be informed that a bb gun is a deadly and dangerous weapon. Since this is undoubtedly a correct statement of the law, the trial court erred by failing to give the requested instruction. (*In re Bartholomew D.* (2005) 131 Cal.App.4th 317, 326 [pellet gun is a dangerous weapon as a matter of law].)

The prejudice emanating from the failure to give the instruction should be measured under the *Chapman* standard. This is so since the instructional omission directly impacted on the jury's consideration of appellant's defense. (*People v. Quach*, supra, 116 Cal.App.4th 294, 303.) However, regardless of

whether the *Chapman* standard or the *Watson* standard is employed, the error must be deemed prejudicial.

The central thesis of the prosecution case was that Mr. Hernandez did not present a risk of imminent harm to appellant. (RT 2093, 2171.) In order to counter this theory, it was imperative that appellant have the opportunity to argue that Mr. Hernandez was acting in a highly dangerous manner since he was wielding a weapon which is deemed dangerous and deadly as a matter of law. In the absence of an instruction on this point, the defense case was measurably weakened.

In addition, it cannot be overlooked that the jury deliberated for approximately nine hours and asked for a rereading of Ms. Rodriguez' testimony as well as a viewing of her car door. (CT 1065, 1067-1068, 1072-1073.) Given these objective indications that the case was a close one, reversal is required.

IV.

THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY *SUA SPONTE* THAT A CITIZEN MAY USE DEADLY FORCE IN ORDER TO APPREHEND A FLEEING BURGLAR.

Pursuant to Penal Code section 197, subdivision 4, a killing is justified when it has been "necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed . . . ." The principle

41

codified in section 197 has been reduced to a jury instruction in CALJIC No. 5.25.[3]

The trial court did not instruct the jury with No. 5.25 or any similar instruction. As will now be demonstrated, this omission constitutes reversible error.

A trial court has the duty to instruct on an affirmative defense *sua sponte*"'" if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."' [Citations.]" (*People v. Maury* (2003) 30 Cal.4th 342, 424.) Here, there is no doubt that the trial court erred by failing to instruct the jury with No. 5.25 or another appropriate instruction.

On its face, section 197, subdivision 4 provides that a citizen may use deadly force in apprehending someone who has committed "any felony." However, the term "any felony" has not been read literally. Rather, the term

───────────────────

3.    CALJIC No. 5.25 provides:

"Homicide is justifiable and not unlawful when necessarily committed in attempting by lawful ways and means:
"[To apprehend any dangerous person who has committed a felony. A dangerous person is one who (a) poses a significant threat of death or serious bodily injury to the person attempting the apprehension or to others, or (b) has committed a forcible and atrocious felony.]
"[To lawfully suppress any riot.]
"[To lawfully keep and preserve the peace.]"

has been limited to those felonies which pose a threat of death or great bodily injury. (*People v. Quesada* (1980) 113 Cal.App.3d 533, 538-540.)

*People v. Martin* (1985) 168 Cal.App.3d 1111 is the most recent case to construe section 197, subdivision 4. There, the defendant observed two unarmed teenagers exiting his son's house after dark. The defendant shot and killed one of the teenagers as he fled. In holding that the killing was justified, the court first noted that nighttime burglary was a common law felony when section 197 was enacted in 1872. (*Id.* at p. 1123.) Thus, the court reasoned that the killing was lawful since the teenager was "fleeing from the scene of his nighttime residential burglary." (*Id.* at p. 1125.)

In anticipation of future litigation, the *Martin* court placed two limitations on its holding. First, the court indicated that section 197, subdivision 4 applies only to crimes which were felonies "at common law." (*Martin,* supra, 168 Cal.App.3d at p. 1125.) Second, in light of the Supreme Court's then brand new decision in *Tennessee v. Garner* (1985) 471 U.S. 1, the court indicated that section 197, subdivision 4 authorizes a killing only when the fleeing felon poses a "significant threat of death or serious physical injury" to the public. (*Id.* at pp. 1124-1125.)

In appellant's view, the limitations stated in *Martin* are not required by existing law. This is so in two respects.

43

First, as was discussed above, *People v. Ceballos,* supra, 12 Cal.3d 470 is the controlling authority with regard to section 197. There, the court held that any burglary falls within subdivision 2 of section 197 so long as the "character and manner of the burglary" pose a threat of "death or serious bodily harm." (*Id.* at p. 479.) Insofar as subdivisions 2 and 4 were enacted at the same time, there is no reason to believe that the Legislature intended to include only "common law" burglaries within the ambit of subdivision 4. Thus, contrary to *Martin, Ceballos* is authority for the proposition that an auto burglary falls within subdivision 4. (See *People v. Piorkowski* (1974) 41 Cal.App.3d 324, 329-330 [construing section 197, subdivision 4 as applying to felonies which threaten death or great bodily harm]; see also *Kortum v. Alkire* (1977) 69 Cal.App.3d 325, 333 [citing *Ceballos* and earlier cases for the proposition that the killing of a fleeing felon is justified when there are "circumstances which reasonably create a fear of death or serious bodily injury" to someone.].)

Second, the *Martin* court erred in holding that *Tennessee v. Garner,* supra, 471 U.S. 1 plays any role in the construction of section 197. In *Garner,* the Supreme Court held that the Fourth Amendment precludes a police officer from killing a fleeing felon who poses no threat to public safety. However, section 197 refers to the rights of private citizens. Since there is no state

44

action when a private citizen kills a fleeing felon, *Garner* can have no bearing on that citizen's rights under a California statute. (*State v. Cooney* (1995) 320 S.C. 107 [463 S.E.2d 597, 598-599] [trial court erred in applying *Garner* and refusing to follow state statute which allowed for private citizen's right to use force in apprehension of felon]; see also *People v. Taylor* (1990) 222 Cal.App.3d 612, 619 [Fourth Amendment does not extend to conduct performed by private persons].)

In any event, the application of *Garner* has no effect on the analysis in this case. This is so since Mr. Hernandez posed a threat to public safety. During the course of a few hours, Mr. Hernandez: (1) engaged in an unprovoked assault on appellant; (2) induced a group of people to chase appellant for the presumed purpose of beating him; and (3) attempted to break into an automobile while armed with a bb gun. Measured by any objective standard, Mr. Hernandez was armed and dangerous. (*In re Bartholomew D.*, supra, 131 Cal.App.4th 317, 326 [bb gun is a dangerous weapon as a matter of law]; see also *People v. Morales* (1993) 19 Cal.App.4th 1383, 1390 [prosecutor successfully argued to jury that section 197, subdivision 4 authorized a citizen to threaten the use of force in order to apprehend an armed auto burglar].)

Aside from a showing that the decedent committed a burglary which

posed a threat to public safety, a defendant who seeks to rely on section 197, subdivision 4 must also adduce substantial evidence that he maintained the intent to apprehend the felon. (*Ceballos,* supra, 12 Cal.3d 470, 482.) Here, there was sufficient evidence for the issue to go to the jury.

During his interview with appellant, Detective Anderson did not ask him whether or not he sought to apprehend Mr. Hernandez. Thus, as is usually true when the trier of fact considers the mental state of a criminal defendant, the question is whether there is circumstantial evidence that appellant maintained the requisite intent. (*People v. Anderson* (1983) 144 Cal.App.3d 55, 62 ["[i]t is elementary that a defendant's state of mind is most often shown through circumstantial evidence . . . ."].)

Viewed in its totality, the record presents substantial evidence that appellant intended to apprehend Mr. Hernandez when he shot at him. In this regard, appellant made clear to Detective Anderson that he did not intend to kill Mr. Hernandez. (ACT 40.) However, appellant clearly intended to fire directly at Mr. Hernandez' lower body when he aimed his gun at the bottom of the door behind which Mr. Hernandez was sitting. (ACT 40.) Given these facts, a juror could reasonably infer that appellant intended to apprehend Mr. Hernandez.

Indeed, this was a logical purpose for appellant's conduct. Insofar as

46

he was hidden from view, appellant could have stood silently by as Mr. Hernandez trashed or stole Mr. Bynum's automobile. Instead, appellant ran over to stop Mr. Hernandez' criminal behavior. On these facts, there was substantial evidence to support the giving of No. 5.25 or a similar instruction. (Compare *People v. Wittig, supra,* 158 Cal.App.3d 124, 136 [instruction on apprehension of fleeing felon was not required where the defendants evinced a lack of intent to apprehend when they made no attempt to seize the victim after shooting and disabling him].)

Finally, it must be emphasized that any doubt with regard to the sufficiency of the evidence to support the instruction must be resolved in favor of appellant. (*People v. Flannel, supra* 25 Cal.3d 668, 685.) Thus, even if appellant's evidentiary showing is deemed to be less than overwhelming, appellant was entitled to have the jury render judgment on his defense.

Turning to the issue of prejudice, the error is reversible per se since the jury was given absolutely no instruction regarding section 197, subdivision 4. (*People v. Stewart, supra,* 16 Cal.3d 133, 141; *People v. Lemus, supra,* 203 Cal.App.3d 470, 478.) Thus, there is simply no basis in the record to conclude that a properly instructed jury would have rejected the omitted defense. As a result, appellant has been deprived of due process under the Fifth and Fourteenth Amendments to the federal Constitution. (*Conde v.*

47

*Henry,* supra, 198 F.3d 734, 740-741.)

Assuming that either the *Chapman* or *Watson* standard is applicable, the error still requires reversal. As was discussed above, the jury was reluctant to convict appellant. (See pp. 27-28, supra.) Although the prosecutor advanced the theory that appellant had committed a first degree murder by lying in wait, the jury returned an acquittal on that count. Thus, the jury was convinced that appellant did not have the motivation to commit a premeditated and unlawful killing. Had the jury been instructed that appellant had the right to use deadly force to apprehend Mr. Hernandez, it is likely that he would have been acquitted on all counts. The judgment must be reversed.

V.

THE ENTIRE JUDGMENT MUST BE REVERSED DUE TO THE CUMULATIVE PREJUDICE FLOWING FROM THE FOUR ERRORS IDENTIFIED ABOVE.

Assuming that this court should conclude that none of the four errors identified above individually warrants reversal, it is manifest that the cumulation of the errors compels a finding of prejudice. (*People v. Hill* (1998) 17 Cal.4th 800, 844.) In establishing this conclusion, it is helpful to compare the trial which actually took place with the one which should have occurred.

In instructing the jury, the court gave a generic set of instructions on

self defense.    However, these instructions were both overinclusive and underinclusive.

On the one hand, the court gave CALJIC Nos. 5.54 and 5.55 which allowed the prosecutor to improperly argue to the jury that appellant had no right to self defense whatsoever since he was either an aggressor or had sought a quarrel.    However, as has been categorically shown in this brief, appellant had every right to confront Mr. Hernandez insofar as Mr. Hernandez was committing a crime.    Thus, the instructions precluded the jury from properly considering appellant's theory of the case.

At the same time, the trial court also failed to give a series of vital instructions which would have provided the jury with the necessary principles which governed appellant's rights to act in self defense, the defense of Mr. Bynum's property and to apprehend Mr. Hernandez.    Insofar as the absence of these instructions allowed the prosecutor to erroneously argue that appellant had no right to act as he did, it is manifest that the jury lacked sufficient guidance in the absence of the omitted instructions.

Appellant will not gild the lily.    The jury was not properly or sufficiently instructed on the legal principles which it needed in order to fully and fairly consider the defense case.    Reversal is required.    (*People v. Hill, supra,* 17 Cal.4th 800, 844.)

IV.

THE CONVICTION FOR SECOND DEGREE MURDER MUST BE REVERSED SINCE THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE PRINCIPLES OF FELONY MURDER.[4]

Appellant objected to any instruction on the doctrine of second degree felony murder. (RT 2062-2066, CT 823-827.) Nonetheless, the trial court instructed the jury that appellant could be convicted of second degree murder on either of two theories: (1) the killing was committed with malice; or (2) the killing occurred during the commission of the felony of shooting at an occupied vehicle. (RT 2035-2039.) The prosecutor argued both theories to the jury. (RT 2086-2091.) As will be demonstrated below, the second theory was invalid for a number of reasons. Insofar as the record does not establish that the jury relied on the first theory, the murder conviction must be reversed.

A.    Insofar As Appellant Admitted Shooting At Mr. Hernandez, The Doctrine Of Second Degree Felony Murder Was Inapplicable Since Appellant's Conduct Had No Purpose Which Was Independent Of Or Collateral To An Intent To Cause Injury.

As a matter of California common law, "an unlawful killing in the commission of a felony that is inherently dangerous to human life" constitutes

---

4.    Appellant acknowledges the outstanding work of attorney J. Bradley O'Connell who first formulated many of the ideas expressed in this portion of the brief.

50

second degree murder. (*People v. Robertson* (2004) 34 Cal.4th 156, 164.)
However, not every dangerous felony allows for the use of a second degree
felony murder theory. Rather, in some cases, the felony "merges" with the
killing such that the doctrine does not apply.

The genesis of the merger doctrine is *People v. Ireland* (1969) 70
Cal.2d 522. There, the jury was instructed that the felony of assault with a
deadly weapon would support a second degree felony murder conviction. The
Supreme Court found that reversible error had occurred since the underlying
felony was such an "integral part of the homicide" that it was "included *in fact*
within the offense charged." (*Id.* at p. 539, fn. omitted.) Thus, *Ireland* stands
for the proposition that second degree felony murder cannot be found when
the underlying felony "merges" with the killing. The rationale for the rule is
that it is improper to bootstrap every felonious assault into a murder since
such a result would circumvent the general legislative requirement that malice
is an element of murder. (*Ibid.*)

In *People v. Mattison* (1971) 4 Cal.3d 177, the court further elaborated
on the "merger" doctrine. There, the defendant was charged with the felony
of putting poison in a drink (Penal Code section 347). In concluding that the
felony did not merge with the killing, the court held that a felony murder
conviction was proper since the felony had been committed with a "'collateral

51

and independent felonious design.' [Citation.]" (*Id.* at p. 185.)

In *People v. Hansen* (1994) 9 Cal.4th 300, the court appeared to consign the *Mattison* test to the dustbin of history. In *Hansen,* the defendant was charged with shooting at an inhabited dwelling house (Penal Code section 246). In holding that the felony did not merge with the killing, the court stated that the "collateral and independent felonious design" standard was not "the critical test determinative of merger in all cases . . . ." (*Id.* at p. 315.) Rather, the court found that shooting at an inhabited dwelling house is not a felony which will "elevate all felonious assaults to murder or otherwise subvert the legislative intent" that malice should ordinarily be required for a murder conviction. (*Ibid.*)

Recently, the court has backtracked from the holding in *Hansen* and once again applied the *Mattison* test. In *People v. Robertson,* supra, 34 Cal.4th 156, the defendant was charged with the negligent discharge of a firearm (Penal Code section 246.3). While acknowledging that *Hansen* had indicated that "the collateral purpose rationale may have its drawbacks in some situations [citation]," the court nonetheless held that the test provided the "appropriate framework" to consider whether a section 246.3 violation could properly support a second degree felony murder conviction. (*Id.* at p. 171.)

In *People v. Randle* (2005) 35 Cal.4th 987, the court applied the collateral purpose rule. There, the defendant and his cousin committed an auto burglary. Upon witnessing the crime, Brian Robinson and Charles Lambert chased the defendant's cousin and beat him. The defendant then shot and killed Mr. Robinson. The jury was instructed that it could return a second degree felony murder conviction based on the defendant's act of negligently discharging his gun (Penal Code section 246.3). Applying the collateral purpose rule, the court found that the underlying felony merged with the killing since the defendant had no criminal purpose other than shooting at the victim. (*Id.* at p. 1005.)

In the case at bar, the jury was instructed that it could return a second degree felony murder conviction based upon appellant's act of shooting at an occupied vehicle (Penal Code section 246). (RT 2035-2038.) Without doubt, this was an improper theory.

In his statement to the police, appellant clearly and unequivocally stated that he intentionally fired his gun at the "bottom half of the door" of Mr. Rodriguez' vehicle. (ACT 40.) Given this admission, the section 246 violation merged with the killing.

*People v. Randle,* supra, 35 Cal.4th 987 supports this conclusion. There, as here, the defendant admitted that he had pointed his gun at the

53

victim when he shot. Insofar as the defendant had no criminal purpose which was "collateral" to the act of shooting at the victim, the court held that a felony murder theory would not lie. (*Id.* at p. 1005.)

The identical analysis is applicable here. By his own admission, appellant fired his gun directly at the door of the automobile in which the decedent was riding. Under these circumstances, the merger doctrine must be applied. (*Randle,* supra, 35 Cal.4th 987, 1005.)

It is likely that the government will contend that *Randle* is distinguishable because appellant specifically disclaimed any intent to shoot Mr. Hernandez "in the head." (ACT 40.) Such an argument would be meritless.

The determinative question is whether "'the purpose of the predicate felony was independent of or collateral to an intent to cause injury that would result in death. [Citation.]'" (*Randle,* supra, 35 Cal.4th 987, 1005.) Importantly, the phrase "intent to cause injury that would result in death" does not mean that an intent to kill is required. A return to basic principles establishes this conclusion.

The bedrock rule of the merger doctrine is that an assault with a deadly weapon will not support a felony murder theory since many homicides involve a felonious assault. (*Robertson,* supra, 34 Cal.4th 156, 169.) However, as a

matter of law, intent to kill is not an element of assault with a deadly weapon. Rather, the crime requires only the general intent to commit an act which might result in injury. (*People v. Williams* (2001) 26 Cal.4th 779, 787.)

Given the basic rule of the merger doctrine, the phrase "intent to cause injury that would result in death" does not mean an "intent to kill." Rather, the phrase means an "intent to cause injury that *might* result in death." In this case, appellant maintained the required intent.

As he admitted to the police, appellant's purpose was to shoot directly at an occupied vehicle. Insofar as this purpose evinced a manifest intent to harm Mr. Hernandez, it cannot be said that the act of shooting did not merge with the killing.

Indeed, the evidence aside from appellant's statement overwhelmingly established that he fired a shot directly at Mr. Hernandez. As a photograph of Ms. Rodriguez' car establishes, the shot entered the door just below the window. (People's Exhibit 5.) Thus, as in *Randle,* the defendant's "admitted [act of] shooting at" the decedent "supports application of the merger rule here." (*Randle*, supra, 35 Cal.4th at p. 1005.)

Should there be any remaining doubt on this point, one need look no further then the government's own words at trial. In his closing argument, the prosecutor told the jury that appellant was "shooting directly" at Mr.

55

Hernandez' body. (RT 2159.) Given this assertion, the merger rule must be applied. (*Randle,* supra, 35 Cal.4th at p. 1005.)

Although the current state of the law is less then clear on this point, it is possible that the government will contend that the collateral purpose rule has no application here since appellant was charged with a violation of section 246 whereas Mr. Randle was charged with a violation of section 246.3. Thus, the government might contend that this case is governed by *People v. Hansen,* supra, 9 Cal.4th 300 where the court declined to apply the collateral purpose rule to the charge of shooting at an inhabited dwelling house (section 246). (*Id.* at p. 315.) If this argument is made, it must fail for two reasons.

First, it is a fair reading of *People v. Robertson,* supra, 35 Cal.4th 156 that the collateral purpose rule is to be applied in all second degree felony murder cases. Indeed, this was the understanding expressed by Justices Kennard and Werdegar. (*Id.* at p. 180 (dis. opn. of Kennard, J.); *Id.* at p. 185 (dis. opn. of Werdegar, J.).)

Second, even if it is assumed that the specific holding in *Hansen* remains good law, the case is distinguishable. The rationale of *Hansen* is that the act of shooting at an inhabited dwelling does not merge with the killing since not every such act will result in a killing. (*Hansen,* supra, 9 Cal.4th at p. 315.) This is, of course, different from the felony of assault with a deadly

weapon where a killing is a likely result. (*People v. Ireland,* supra, 70 Cal.2d 522, 539.)

Unlike the act of shooting at an inhabited dwelling, the act of shooting at an occupied vehicle is a crime which is quite likely to lead to death. This is so since a person must necessarily be present for a violation of shooting at an occupied vehicle to occur. However, the crime of shooting at an inhabited dwelling does not require that anyone be present. (*People v. Hansen,* supra, 9 Cal.4th 300, 310.) Thus, the crime of shooting at an occupied vehicle is akin to assault with a deadly weapon and the merger doctrine must apply.

Indeed, the analysis in *Hansen* fully supports this conclusion. In *Hansen,* the court emphasized that the rationale of the merger doctrine is that an assault with a deadly weapon cannot be allowed to be the predicate for a felony murder theory since "every felonious assault ending in death automatically would be elevated to murder . . . ." (*Hansen,* supra, 9 Cal.4th 300, 311.) Such a state of affairs is untenable since:

> "[A]pplication of the felony-murder rule to felonious assaults would usurp most of the law of homicide, relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction, and thereby frustrate the Legislature's intent to punish certain felonious assaults resulting in death (those committed with malice aforethought, and therefore punishable as murder) more harshly than other felonious assaults that happened to result in death (those committed without malice aforethought, and therefore punishable as manslaughter).

[Citations.]" (*Hansen,* supra, 9 Cal.4th at pp. 311-312.)

When the court's concern is applied to the offense of shooting at an occupied vehicle, it is manifest that the offense cannot be allowed to be a predicate for felony murder. This is so for the simple reason that the nature of the criminal act specified in Penal Code section 246 is in fact an assault with a deadly weapon. Since both Penal Code section 245 and Penal Code section 246 require the presence of a victim who is within a zone of danger, it necessarily follows that an assault under section 246 is no less an assault than that required under section 245. Stated otherwise, every assault committed under section 246 could be lawfully charged as a violation of section 245. Since a violation of section 245 cannot be used as the predicate for a felony murder theory, it necessarily follows that the same must be true for a violation of section 246.

Appellant is aware that one Court of Appeal has held that the merger doctrine does not apply to the offense of shooting at an occupied vehicle. (*People v. Tabios* (1998) 67 Cal.App.4th 1, 11.) However, the *Tabios* court engaged in virtually no analysis. Rather, the court held only that the reasoning of *Hansen* was directly on point. (*Ibid.*) As has been shown above, this is incorrect since the crimes of shooting at an inhabited dwelling and shooting at an occupied vehicle are quite different when measured under the rationale

58

underlying the merger doctrine. Thus, *Tabios* is unpersuasive and should not be followed.

Having established that it was error to instruct the jury on second degree felony murder, it necessarily follows that the murder conviction must be reversed. The jury was instructed on two theories of second degree murder: (1) malice murder; and (2) felony murder. Since the felony murder theory was erroneous as a matter of law and the record does not show that the jury relied on the legally correct theory, reversal is compelled under the due process clause of the federal Constitution. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129; *Sandstrom v. Montana* (1979) 442 U.S. 510, 526; *Martinez v. Garcia* (9th Cir. 2004) 379 F.3d 1034, 1039.)

B.    The Judgment Must Be Reversed Since The Jury Was Not Given An Instruction Regarding The Collateral Purpose Rule.

In instructing the jury on the elements of second degree felony murder, the trial court gave no instruction regarding the collateral purpose rule. (RT 2036-2038.) This omission constitutes reversible error.

As is well settled, the trial court has the duty to instruct *sua sponte* on all of the elements of the offense charged. (*People v. McDaniel* (1979) 24 Cal.3d 661, 670.) As our Supreme Court has held, the determinative element of second degree felony murder is whether the defendant's criminal act had

a purpose which was collateral to the act of injuring the victim. (*People v. Randle,* supra, 35 Cal.4th 987, 1005.) Since this principle was fundamental to the jury's understanding of the issue before it, the trial court erred by failing to give an appropriate instruction.

As the U.S. Supreme Court has recently clarified, whenever a defendant's exposure to greater punishment or liability depends on factual findings concerning the circumstances of the offense, those factual matters must be submitted to the jury for its consideration. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 484-485.) In the context of second degree felony murder, the California Supreme Court has decreed that liability may only be found when the defendant's criminal act had a purpose collateral to that of injuring the victim. Plainly, this is a question of fact on which the jury must pass. (*Ibid.*)

Should there be any doubt concerning this conclusion, one need only look to the disparate results in *Robertson* and *Randle.* In each case, the Supreme Court closely analyzed the facts in order to render a determination as to whether the defendant had an intent collateral to shooting the victim. (*Randle,* supra, 35 Cal.4th 987, 1005, emphasis added ["[t]he *fact* that defendant admitted shooting at Robinson distinguishes *Robertson* and supports application of the merger rule here."]; *Robertson*, supra, 34 Cal.4th

60

156, 173; emphasis added ["[w]e conclude that the merger doctrine does not preclude application of the felony-murder rule *under the facts of the present case* . . . ."].)  Given the court's emphasis on the fact-based analysis which supported its holdings, the conclusion necessarily follows that appellant had a federal constitutional right to have the jury adjudicate the issue of whether the collateral purpose rule was applicable in this case.  (*Apprendi v. New Jersey*, supra, 530 U.S. 466, 484-485.)

The remaining question is whether the error was prejudicial.  Insofar as the error implicates the due process clause of the federal Constitution, the burden falls on the government to establish that the error was harmless beyond a reasonable doubt.  (*People v. Sakarias* (2000) 22 Cal.4th 596, 624-625 [failure to instruct on all of the elements of felony murder compels application of the prejudice standard found in *Chapman v. California*, supra, 386 U.S. 18, 24].)  On the instant record, the government cannot possibly satisfy the *Chapman* test.

The evidence overwhelmingly established that appellant shot directly at the door behind which Mr. Hernandez was sitting.  On this record, it is inconceivable that a correctly instructed jury would have found that appellant had a purpose which was collateral to assaulting Mr. Hernandez.  Moreover, even if the evidence was more closely balanced, reversal would nonetheless

be required.

In *Neder v. United States,* supra, 527 U.S. 1, the Supreme Court considered the situation where the trial court erred by failing to instruct on an element of the offense. The court indicated that this type of error cannot be deemed harmless if the element in question was subject to dispute.

> "Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error-*for example where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding*-it should not find the error harmless." (Id. at p. 19, emphasis added.)

Appellant will not belabor the obvious. At trial, the jury heard ample evidence that appellant lacked a collateral purpose in shooting Mr. Hernandez. Insofar as the jury heard "evidence sufficient" to support a finding in appellant's favor, the error must be deemed prejudicial. (*Neder,* supra, 527 U.S. 1, 19.)

C.  <u>The Second Degree Felony Murder Rule Is Unconstitutional Since It Was Created By The Courts Rather Than The Legislature.</u>

Pursuant to Article III, section 3 of the California Constitution, the judicial branch of government is barred from exercising legislative power. Thus, the power to define crimes is vested exclusively in the legislative branch. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552.) This

62

principle is also enshrined in the Penal Code which specifically provides that no act performed in California is criminal unless it is specified in statutory law. (Penal Code section 6.) As will now be explained, the second degree felony murder rule must be struck down since it is violative of these principles.

The Legislature has defined murder as an unlawful killing committed with malice aforethought. (Penal Code section 187, subd. (a).) The sole exception to this requirement is that malice need not be proved in the case of *first* degree felony murder. (Penal Code section 189.) Thus, under the explicit terms of the Penal Code, malice is a required element for the crime of second degree murder.

As the California Supreme Court has admitted, "the second degree felony-murder rule is a court-made rule [which] has no statutory definition." (*People v. Howard* (2005) 34 Cal.4th 1129, 1135.) Indeed, there is no getting around this fact since the court has also conceded that the doctrine has eliminated the required statutory element of malice. (*People v. Robertson, supra,* 34 Cal.4th 156, 165.) Given the court's statements, the conclusion is inescapable that the second degree felony murder rule must be abrogated.

Under Article III, section 3, a court may not create a crime. Since the Legislature has not authorized the use of the second degree felony murder

rule, the judgment must be reversed.

In making this claim, appellant acknowledges that this court has previously rejected the same contention on the grounds that it was bound to obey the Supreme Court's view that the second degree felony murder doctrine is lawful. (*People v. Landry* (1989) 212 Cal.App.3d 1428, 1434-1437.) However, much has changed since *Landry* was decided.

As has been discussed above, the Supreme Court has now made the express admission that the second degree felony murder rule is a "common law" doctrine which was enacted by the courts. (*Robertson, supra,* 35 Cal.4th 156, 166.) Since a California court has no power to enact a crime, this court has the constitutional duty to so hold. At the very least, this court should state in a published opinion that appellant's position is meritorious.

> D. <u>If It Is Held That The Element Of Malice Is Presumed By The Commission Of A Qualifying Felony, The Judgment Must Be Reversed Since The Use Of An Irrebutable Presumption Is Proscribed By The Due Process Clause Of The Federal Constitution.</u>

Prior to *People v. Robertson, supra,* 35 Cal.4th 156, the Supreme Court repeatedly indicated that the element of malice was presumed when the commission of a qualifying felony was shown. (*People v. Hansen, supra,* 9 Cal.4th 300, 308; *People v. Satchell* (1971) 6 Cal.3d 28, 34, 43 and fn. 11.) Assuming that the court did not intend to overrule these authorities in *People*

*v. Robertson,* supra, 35 Cal.4th 156, the federal Constitution precludes application of the second degree felony murder rule.

By statute, malice is an element of second degree murder. (Penal Code section 187, subd. (a).) Thus, it is incumbent upon the prosecutor to prove the element. If, as the Supreme Court has indicated, the element is presumed from the commission of the underlying felony, federal constitutional error must be found.

As a matter of due process, the court may not instruct the jury that it must conclusively presume that an element of the offense has been proven. (*Carella v. California* (1989) 491 U.S. 263, 265-266.) Since the second degree felony murder instructions in this case did not require the jury to consider the element of malice, the jury was effectively told to conclusively presume that malice was proven. As a result, the element of malice was unconstitutionally removed from the jury's consideration.

When the jury has been instructed on a mandatory presumption, reversal is compelled unless the record establishes beyond a reasonable doubt that "the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption." (*Yates v. Evatt* (1991) 500 U.S. 391, 404.) Here, it is impossible for the government to satisfy this test.

The jury returned a general verdict which gave no clue as to whether appellant was convicted on a malice murder theory or a felony murder theory. Since we have no way of knowing whether the jury gave *any* consideration to the element of malice, the judgment must be reversed. (*Yates*, supra, 500 U.S. 391, 404.)

## VII.

### THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S *DILLON* MOTION.

Pursuant to Article I, section 17 of the California Constitution, a trial court is precluded from imposing a punishment which is either cruel or unusual. In light of this provision, our Supreme Court has held that a court may reduce the mandatory statutory punishment for a murder when that punishment is excessive in light of the facts of the case and the nature of the offender. (*People v. Dillon,* supra, 34 Cal.3d 441, 477-489.)

In the trial court, appellant filed detailed pleadings in which he established that this was an appropriate case for a grant of relief under *Dillon*. (CT 1085-1102, 1112-1126.) The People opposed the motion. (CT 1105-1110.) After giving the motion careful consideration, the trial court found that appellant's sentence of 40 years to life was not constitutionally excessive since it could not "find a motive for this killing, other than a misconceived or misguided attempt to achieve respect." (RT 2230.) For a number of reasons,